**William ROMERO, Petitioner**

v.

**The PEOPLE of the State of Colorado, Respondent.**

**No. 06SC586.**

Supreme Court of Colorado, En Banc.

Nov. 26, 2007.

---

Douglas K. Wilson, Colorado State Public Defender, Elizabeth Griffin, Deputy State Public Defender, Denver, Colorado, Attorneys for Petitioner.

Rodney D. Fouracre, District Attorney, Sixteenth Judicial District, James S. Whitmire, Deputy District Attorney, LaJunta, Colorado, Attorneys for Respondent.

Justice RICE delivered the Opinion of the Court.

## I. Introduction

The issue presented is whether the court of appeals erred in holding that when an offender's sentence to community corrections has been revoked, a court may resentence that offender to a longer term than the original sentence, so long as a hearing is held.[1] Petitioner William Romero argues that increasing the offender's sentence violates both section 18–1.3–301(1)(e), C.R.S. (2007), and double jeopardy. We affirm the court of appeals.

## II. Facts and Procedural History

In May 2001, Romero pled guilty to one count of distribution of a schedule two controlled substance, a class three felony, and was sentenced to four years in Minnequa Community Corrections. One condition of Romero's sentence was that he remain drug and alcohol free. Over a year later, Romero's urine tested positive for cocaine, and he was terminated from the community corrections program. The sentencing court held a hearing at which counsel for Romero was present. After the hearing, the court sentenced Romero to five years in a community corrections program in Greeley, called the Restitution Center. The court stated that the reason for the increased sentence was that it believed the extra year was needed to rehabilitate Romero.

Romero moved for postconviction relief under Rule 35 of the Colorado Rules of Crimi-

1. Specifically, we granted certiorari on the question of "[w]hether the court of appeals erred in ruling that the imposition of a longer community corrections term upon revocation of the original term violates neither double jeopardy nor section 18–1.3–301(1)(e), C.R.S. (2007), so long as the defendant is afforded a hearing."

nal Procedure, alleging that the five-year sentence violated subsection (1)(e) because it exceeded the four-year sentence which was originally imposed. The district court agreed with Romero and set aside the five-year sentence, imposing instead a four-year sentence.

■ The prosecution appealed the sentence reduction. In an unpublished opinion, the court of appeals reversed and remanded for reinstatement of the five-year sentence. Romero appealed that ruling, and this court granted certiorari.[2]

### III. Statutory Interpretation

Romero asserts that the court of appeals erred in reinstating the five-year sentence because the increased sentence violates both the community corrections statute and double jeopardy. If Romero is correct that the court of appeals' interpretation does not comport with the statute, we need not reach the constitutional issue. Therefore, we begin our decision with the statutory analysis.

### A. Standard of Review and Methods of Judicial Interpretation

■ At issue is the correct interpretation of subsection (1)(e) of the community corrections statute. The interpretation of a statute is a question of law, which is reviewed de novo. *Hendricks v. People,* 10 P.3d 1231, 1235 (Colo.2000).

■ Our primary task when construing a statute is to give effect to the General Assembly's intent. *Klinger v. Adams County Sch. Dist. No. 50,* 130 P.3d 1027, 1031 (Colo.2006). We determine legislative intent primarily from the plain language of the statute. *Indus. Claim Appeals Office v. Ray,* 145 P.3d 661, 668 (Colo.2006). If the statutory language is clear and unambiguous, we do not engage in further statutory analysis. *Klinger,* 130 P.3d at 1031. However, if the statutory language is ambiguous, we may look to other rules of statutory construction

or to the legislative history to discern the legislature's intent. *Grant v. People,* 48 P.3d 543, 546 (Colo.2002).

### B. Subsection (1)(e) Implies That a Sentence Increase Is Allowed

■ Subsection (1)(e) states, "If an offender is rejected after acceptance by a community corrections board or a community corrections program, the court may resentence the offender without any further hearing so long as the offender's sentence does not exceed the sentence which was originally imposed upon the offender." This provision applies when an offender has been sentenced to and accepted by a community corrections board or program and has subsequently been rejected from that board or program (when an offender is "rejected after acceptance"). The rejection may be due to the offender's conduct, such as when an offender violates a condition of treatment. An offender may also be rejected through no fault of his own, such as when a community corrections program is closed. Regardless of the reason for rejection, an offender who is terminated from community corrections is subject to resentencing by a district court. At issue is whether subsection (1)(e) absolutely forbids a sentencing court from increasing an offender's sentence beyond the original sentence to community corrections.

Romero argues that subsection (1)(e) prohibits a sentence increase under all circumstances. The People counter that a sentence increase is allowed when, as here, the offender has been afforded a hearing. We determine by the statute's plain language that, upon holding a hearing, a sentencing court may increase an offender's sentence under subsection (1)(e). We find that subsection (1)(e) implies that an offender's sentence may be increased, and that section 18–1.3–301(1)(h), C.R.S. (2007), makes that implication explicit.

**2.** Upon examination of the record, it appears likely that Petitioner has already been released, making this case moot. Generally, we decline to decide a matter that is moot. However, an exception to the mootness doctrine exists when the controversy is capable of repetition, yet evades

review. *Colo. Dep't of Corr., Parole Div. ex rel. Miller v. Madison,* 85 P.3d 542, 544 (2004). We are persuaded that, given the relatively short sentences involved and the length of the appeals process, this issue falls within the exception.

The language of subsection (1)(e) permits a court to "resentence the offender without any further hearing so long as the offender's sentence does not exceed the [originally imposed] sentence." The plain language of the phrase "so long as" makes conditional the court's power to resentence the offender without any further hearing. In other words, the court has the power to omit a hearing only if it meets certain conditions (i.e., if the new sentence does not exceed the original sentence). Implicitly, then, the opposite must also be true; when those conditions are not met (i.e., when the new sentence does exceed the original sentence), the court must hold a hearing. Thus, the language of subsection (1)(e) implies that, under some circumstances, the sentencing court would have the authority to impose a longer sentence than the original sentence to community corrections. Put another way, the implication of the statute's plain language is that the court has the authority to increase an offender's sentence on the condition that the offender is afforded a hearing.

## C. Subsection (1)(h) Makes Explicit the Implication of Permissibility in Subsection (1)(e)

Subsection (1)(h) makes explicit the implication in subsection (1)(e) that a sentence increase is permissible. Subsection (1)(h) states in its entirety, "The sentencing court shall have the authority to modify the sentence of an offender who has been directly sentenced to a community corrections program in the same manner as if the offender had been placed on probation." Under subsection (1)(h), therefore, this court must look to what sentence Romero could have been given had he violated a condition of probation rather than a condition of his community corrections sentence.

An examination of Colorado law indicates that had Romero been placed on probation, the sentencing court could have modified his sentence by increasing it to five years. We look to section 16–11–206(5), C.R.S. (2007), because it governs the resentencing of an offender who has violated a condition of probation.[3] When an offender violates a condition of probation, a sentencing court may "impose any sentence ... which might originally have been imposed ...." § 16–11–206(5). The sentencing court in this case could initially have imposed a sentence of up to twelve years in the presumptive range, or more in the aggravated range. § 18–1.3–401(1)(a)(V), C.R.S. (2007) (presumptive range sentence for class three felony ranges between four and twelve years). Therefore, had Romero violated a condition of probation rather than a condition of his sentence, the sentencing court could have increased his sentence to five years at community corrections. Because subsection (1)(h) by its plain language permits a sentencing court to sentence an offender as if he had been placed on probation, the five-year sentence is permissible.[4]

## D. Result Is Reasonable and Consistent with Caselaw

### 1. Interpretation of Subsection (1)(e) Is Rational

This interpretation of subsection (1)(e) leads to a rational result. First, it is reasonable that the legislature would give courts flexibility to increase a sentence when the circumstances merit it. In fact, the legislative declaration to the community corrections statute states, "[I]t is the purpose of this article to establish and maintain community corrections programs which provide the

---

**3.** The plain language of subsection (1)(h) permits the sentencing court to modify a sentence as if the offender had been placed on probation. Therefore, in reviewing a sentence change, we must look to the facts of the case at hand to determine which provision of the probation statute would apply had the offender been placed on probation, rather than being sentenced to community corrections. Here, the offender violated a condition of his sentence to community corrections. Therefore, we look to the section of the probation statute, section 16–11–206(5), that

controls when an offender has violated a condition of probation.

**4.** We note that the sentencing court must provide a hearing to a probationer before revoking probation and subjecting the offender to resentencing. See § 16–11–206(5). Romero and his counsel were present at his hearing, and we are satisfied that the hearing would have met the due process requirements under section 16–11–206(5).

courts ... with more flexibility and a broader range of correctional options for offenders ...." § 17–27–101, C.R.S. (2007). Second, information about an offender's correctional needs may come to light during an offender's time at community corrections, justifying a sentencing change.[5] Here, for instance, the trial court justified the imposition of a longer rehabilitation period by noting Romero's initial success at community corrections and his subsequent relapse to cocaine. Third, it is reasonable that the legislature would afford a hearing only to those who receive increased sentences, thereby providing those offenders with more procedural rights than an offender whose sentence is reduced or stays the same.

Last, this reading is consistent with the distinct functions of subsections (1)(e) and (1)(h). By its own terms, subsection (1)(e) applies only when the sentencing court has not held a hearing. On the other hand, because a probationer is afforded a hearing before resentencing under section 16–11–206(5), subsection (1)(h) applies only where the offender has been afforded a hearing. *See* § 16–11–206(5) (court may revoke probation within five days after holding a hearing; if probation is revoked, court may resentence the offender). Therefore, subsections (1)(e) and (1)(h) work together to dictate permissible sentences for offenders who have been directly sentenced to community corrections.

### 2. Caselaw Supports Permitting a Sentence Increase

The position that a sentence increase is permitted is supported by the court of appeals' opinion in *People v. Adams*, 128 P.3d 260 (Colo.App.2005).[6] The facts in *Adams* are similar to the facts in this case. In *Adams*, the defendant was sentenced to com-

munity corrections, but she was rejected shortly after beginning to serve her sentence there. *Id.* at 261. After a hearing, she was resentenced under subsection (1)(e) in a manner that had the effect of increasing the amount of time she would be required to serve.[7] *Id.* The *Adams* court noted that subsection (1)(e), by its own language, applies only when an offender has been resentenced "without any further hearing." *Id.* at 262. Therefore, the court held that subsection (1)(e) does not apply to offenders who have been afforded a hearing. *Id.* It stated that because the sentencing court had held a hearing for the defendant in that case, it "was not subject to the limitation contained in § 18–1.3–301(1)(e)." *Id.* Instead, the *Adams* court applied subsection (1)(h), holding that the sentencing court could resentence the defendant as if she had been placed on probation. *Id.* Therefore, the *Adams* court held that the district court was permitted to increase the offender's term at resentencing. *Id.*

### 3. The Alternative Position Lacks Meaningful Support in Caselaw

Romero relies on prior caselaw to argue that his sentence increase was not allowed under subsection (1)(e). This caselaw is not convincing because the facts are distinguishable from the case at hand and the statutory interpretation in those cases lacks significant analysis. Additionally, sources supporting the People's position undermine any argument that a consensus exists within the court of appeals.

Romero primarily cites *People v. Johnson*, 987 P.2d 928 (Colo.App.1999), *rev'd*, 13 P.3d

---

**5.** This provides an explanation for the distinction between subsection (1)(e) and section 18–1.3–301(1)(d), C.R.S. (2007). Under subsection (1)(d), the offender has not begun serving a sentence at community corrections when he is resentenced. Thus, under subsection (1)(d), the sentencing court normally would not have any more information at resentencing than it did at the initial sentencing.

**6.** In addition, the court of appeals' opinion in *People v. McPherson*, 53 P.3d 679 (Colo.App. 2001) supports this court's position. In that case, the court of appeals held that the defendant

was not entitled to a hearing because the new sentence did not exceed the original sentence to community corrections. *Id.* at 683. In other words, the *McPherson* court would have permitted a trial court to increase a sentence under circumstances in which the offender was afforded a hearing.

**7.** Specifically, the resentencing court changed the *Adams* defendant's sentence from concurrent to consecutive, which is considered a sentence increase. *See People v. Sandoval*, 974 P.2d 1012, 1015 (Colo.App.1998).

309 (Colo.2000), and *People v. Snare*, 7 P.3d 1025 (Colo.App.1999), *cert. denied*, No. 99SC937 (Colo. Aug. 21, 2000), to support his position. The facts of *Johnson* and *Snare* are similar. The defendants in both cases were initially sentenced to a term at community corrections and subsequently rejected from community corrections. *Snare*, 7 P.3d at 1027; *Johnson*, 987 P.2d at 930.

While the defendant in *Snare* did not receive a hearing, *id.*, it is unclear whether the defendant in *Johnson* received a hearing. Both defendants were then resentenced to the Department of Corrections under the predecessor to subsection (1)(e).[8] *Snare*, 7 P.3d at 1027; *Johnson*, 987 P.2d at 930. While the defendants' new sentences were for the same duration as their initial community corrections sentences, their new sentences additionally required each defendant to serve a term of parole that was not part of their original requirements. *Snare*, 7 P.3d at 1027; *Johnson*, 987 P.2d at 930. The court of appeals in *Johnson* held that the addition of a term of parole constituted a sentence increase and that the sentence increase violated the predecessor to subsection (1)(e). 987 P.2d at 931. The court of appeals in *Snare* disagreed with the *Johnson* court, holding that the defendant had not suffered an illegal sentence increase because the term of mandatory parole was not part of the defendant's new sentence. 7 P.3d at 1027. However, in dictum, the *Snare* court stated that a defendant's new sentence may not exceed the length of the original direct sentence to community corrections. *Id.* at 1028.

Upon appeal to this court, we overruled *Johnson* in *People v. Johnson*, 13 P.3d 309 (Colo.2000). We held that the addition of parole did not constitute a sentence increase. *Id.* at 314. Because there was no sentence increase, we did not reach the issue of whether such an increase would have violated the statute. Therefore, any discussion by this court in *Johnson* as to the permissibility of increasing a sentence under the predecessor to subsection (1)(e) is mere dicta.

Moreover, the facts of *Johnson* and *Snare* are distinguishable from the current case, and the court of appeals' statutory analysis is unhelpful. The facts are distinguishable because in *Snare*, the defendant did not receive a hearing, and in *Johnson*, there is no mention of whether the defendant received a hearing. As discussed above, the existence of a hearing is vital to our determination of whether a sentencing court may properly increase an offender's sentence under subsection (1)(e). Furthermore, the court of appeals' opinions in *Johnson* and *Snare* lack meaningful statutory analysis. In *Johnson*, the court of appeals made the conclusory statement that the provision prohibited imposition of a sentence that exceeds the length of the original sentence. 987 P.2d at 931. Similarly, the *Snare* court stated without explanation that the statute prohibited the resentencing court from exceeding the original term to community corrections. 7 P.3d at 1028. Because the *Snare* and *Johnson* courts' conclusions lack substantial analysis and explanation, they provide limited guidance to this court.

### IV. Double Jeopardy

■■■ Romero also argues that the increase in his sentence violates the double jeopardy clauses of the United States and Colorado Constitutions. U.S. Const. amends. V, XIV; Colo. Const. art. II, § 18. Under some circumstances, increasing a lawful sentence after a defendant has begun to serve it violates the double jeopardy protection against multiple punishments for the same offense. *People v. Chavez*, 32 P.3d 613, 614 (Colo.App.2001) (citing *People v. Shepard*, 989 P.2d 183 (Colo.App.1999)). However, double jeopardy does not bar the imposition of an increased sentence if the defendant lacked a legitimate expectation of finality in the sentence. *See United States v. DiFrancesco*, 449 U.S. 117, 139, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980) (asserting that the argument that a trial judge should be prohibited from increasing an offender's sentence once an offender has begun serving it has no force

---

8. In 2003, the provision at issue was renumbered from section 17–27–105(1)(e), C.R.S. (2002) to section 18–1.3–301(1)(e). The language of section 17–27–105(1)(e) is identical to the current version of subsection (1)(e). Both *Johnson* and *Snare* interpret the meaning of the predecessor statute, section 17–27–105(1)(e).

where there can be no expectation of finality in the original sentence); *Adams,* 128 P.3d at 261 (stating that a punishment may be increased where offender has no legitimate expectation of finality in the original sentence).

In this case, Romero lacked a legitimate expectation of finality in his four-year sentence. As discussed above, the legislature provided in the community corrections statute that certain offenders' sentences may be increased. Because the legislature provided for the possibility of a sentence increase under Romero's circumstances, Romero lacked a legitimate expectation of finality in his sentence. In so finding, we agree with a long line of decisions in which the court of appeals has held that there is no expectation of finality in community corrections sentences. *See, e.g., Adams,* 128 P.3d at 261; *People v. Rodriguez,* 55 P.3d 173, 174 (Colo. App.2002); *McPherson,* 53 P.3d at 681; *Chavez,* 32 P.3d at 615. Thus, we hold that the sentence increase did not violate double jeopardy.

## V. Conclusion

In sum, we hold that subsection (1)(e) gives the sentencing court the authority to increase an offender's sentence on the condition that the offender has been afforded a hearing. Additionally, we hold that imposing a sentence increase under subsection (1)(e) does not violate double jeopardy.

We affirm the court of appeals.

Justice MARTINEZ dissents, Chief Justice MULLARKEY and Justice BENDER join in the dissent.

MARTINEZ, J., dissenting.

I respectfully dissent from the majority opinion and the majority's holding that section 18–1.3–301(1)(e), C.R.S. (2007), indirectly authorizes a court to increase an offender's sentence at resentencing if the offender has been afforded a hearing. *See* maj. op. at 990. To support its conclusion, the majority ignores the more reasonable interpretation of subsection (1)(e) and conflates its mistaken interpretation with subsection (1)(h), which provides for the modification of the sentence

pursuant to the statutory procedures for modification of probation. The majority's interpretation ignores the differences between subsections (1)(e) and (1)(h) as well as the legislative history of both subsections. Moreover, the majority's application of probation modification hearing requirements to a subsection (1)(e) transfer would require a due process hearing addressing whether the sentence should be modified. Such a hearing was not conducted here.

Instead, I would hold that subsection (1)(e) authorizes the sentencing court to resentence an offender without increasing the sentence, irrespective of whether the court affords the offender a hearing. I reach this conclusion because prior law and the legislative history of subsection (1)(e) indicate the General Assembly did not intend to grant increased sentencing authority to the courts.

Subsection (1)(e) gives the court authority to resentence an offender originally sentenced to community corrections but later rejected by the community corrections program with or without cause. *See* § 18–1.3–301(1)(e). It provides that "[i]f an offender is rejected after acceptance by a community corrections board or a community corrections program, *the court may resentence the offender without any further hearing so long as the offender's sentence does not exceed the sentence which was originally imposed* upon the offender." *Id.* (emphasis added).

In my view, the words "without any further hearing" are parenthetical: "The court may resentence the offender (without any further hearing) so long as the offender's sentence does not exceed the sentence which was originally imposed upon the offender." Thus, my interpretation of subsection (1)(e) prohibits a sentence increase. The majority suggests that subsection (1)(e) can be interpreted to permit a court to increase an offender's sentence if the offender has been afforded a hearing. Before I discuss how prior law and legislative history support my interpretation of subsection (1)(e), I explain why the majority's reading of subsection (1)(e) is incorrect.

The majority's inference that subsection (1)(h) permits its reading of subsection (1)(e)

is misplaced for several reasons. First, nothing in the plain language of subsections (1)(e) and (1)(h) suggests that the two subsections are other than separate and distinct provisions that do not merge. Second, the legislative history of subsection (1)(h) demonstrates that the purpose of the provision was to allow the court to reduce the offender's community corrections sentence while the offender is still serving that sentence. Third, since sentences to community corrections and the Department of Corrections are in many respects functionally equivalent, resentencing after rejection is merely part of a transfer procedure that follows after a community corrections facility terminates an offender. Applying the requirements of a probation modification hearing to resentencing under subsection (1)(e) not only ignores the purpose of the resentencing and the procedures mandated by the community corrections statute, but also fails to justify increasing an offender's sentence.

Since subsections (1)(e) and (1)(h) are separate and distinct provisions, subsection (1)(h) creates no implication as to the meaning of subsection (1)(e). Subsection (1)(e) concerns situations where an offender is rejected by a community corrections facility after acceptance for any reason or no reason at all. § 18–1.3–301(1)(e). After such rejection, the offender's placement comes to an end, and the court determines the offender's next placement at resentencing. *Id.* In contrast, subsection (1)(h) addresses modification of the terms of an offender's sentence while the offender is still serving his original term at community corrections. § 18–1.3–

301(1)(h). Specifically, section (1)(h) provides: "The sentencing court shall have the *authority to modify the sentence* of an offender *who has been directly sentenced to a community corrections program* in the same manner as if the offender had been placed on probation." *Id.* Thus, subsection (1)(h) does not apply to the determination of the offender's next placement after he was rejected by a community corrections facility.

The direct predecessor of subsection (1)(h), section 17–27–105(1)(h), was enacted in 1993 as part of a repeal and reenactment of the entire community corrections statute.[1] *See* ch. 187, sec. 1, §§ 17–27–101 to –108, 1993 Colo. Sess. Laws 708, 718. The discussion of the bill at the House Judiciary Committee makes it absolutely clear that the purpose of section 17–27–105(1)(h) was to give the court the authority to *reduce* the offender's sentence. *Hearing on H.B. 93–1233 before H. Judiciary Comm.*, 59th Gen. Assemb., 1st Reg. Sess. (Colo.1993) [hereinafter *H. Comm. Hearing*]. The key witness at the House Judiciary Committee hearing, Larry Linke of the Division of Criminal Justice, discussed the reasons for including section 17–27–105(1)(h) in the bill. *Id.* He explained that courts preferred to impose lengthy sentences to community corrections to motivate offenders to comply with the conditions of the program, but lacked authority to subsequently reduce the sentence if the offender did well at the program. Id. Section 17–27–105(1)(h) would allow the court, if the offender responded well to the program, "to reconsider the case and dismiss [the offender] just as [the court would dismiss] a probationer."[2]

1. In 2002, section 17–27–105(1)(h) was relocated and renumbered as section 18–1.3–301(1)(h). *See* ch. 318, sec. 2, § 18–1.3–301(1)(h), 2002 Colo. Sess. Laws 1365, 1387. The language of section 17–27–105(1)(h) is identical to the current version of subsection (1)(h).

2. In his testimony before the House Judiciary Committee, Mr. Linke stated:

   *Judges prefer to have a fairly lengthy sentence to motivate offenders to comply with the requirements of community corrections* and to also have that as an option available to the courts if an offender who is placed in the community fails and has to return to the Department of Corrections. However, *if an offender* with one of these lengthy sentences *does well in community corrections and is adjusting positively, his-*

   *torically, there has been no way to go back and modify and reduce that sentence. What we did include in this draft is a section that would allow the jurisdiction of the case, of the direct sentence, to remain with the court so that if [the court] feels an offender has adjusted well and could be discharged early, [the court] could reconsider the case and dismiss [the offender] just as [the court does] with a probationer.* We feel that this gives the courts the flexibility to impose long sentences when they need to, but then *when there is demonstration of adequate and proper adjustment by the offender, [the courts] can go back and reconsider the case and discharge [the offender]* and relieve the state of that added expense. We [the Division of Criminal Justice] have ... included no fiscal note in this whole bill but if we were to do one, we feel

Thus, nothing in the legislative history suggests that the General Assembly intended section 17–27–105(1)(h) to permit sentence increases. To the contrary, section 17–27–105(1)(h) was intended to allow for sentence reductions where warranted by the offender's progress at community corrections.

Implying from subsection (1)(h) the courts' authority to increase sentences at resentencing contradicts our statutory scheme, sentencing practices, and case law that have considered community corrections and the Department of Corrections ("DOC") to be close equivalents. Because of the similarities between community corrections and DOC sentences, resentencing under subsection (1)(e) is equivalent to a transfer of an offender from one facility to another. Generally, the court has discretion to impose a sentence either to the DOC or to community corrections. *See* § 18–1.3–301(1)(a).[3] In either case, the presumptive sentencing ranges for felony sentencing apply. *See* § 18–1.3–301(1)(b).[4] When a court sentences an offender to the DOC, the DOC may choose to transfer the offender to a community corrections facility. An offender who escapes from a residential or non-residential community corrections program is punishable the same way as if he escaped from a DOC facility. *See* §§ 17–27–106(1)(a), 18–8–208, C.R.S. (2007); *People v. Forester*, 1 P.3d 758, 759 (Colo.App.2000) (holding that section 17–27–106 applies to both residential and nonresidential community corrections programs). Finally, an offender resentenced to the DOC is entitled to credit for time spent in a residential community corrections program. § 18–1.3–301(1)(j).

Consistent with the statutory scheme, this court has recognized that a sentence to community corrections is in many respects a functional equivalent of a DOC sentence. *See, e.g., Shipley v. People,* 45 P.3d 1277, 1280 (Colo.2002) (noting that the terms "incarceration" and "imprisonment" refer, in certain circumstances, to community correction sentences as well as DOC sentences); *Downing v. People,* 895 P.2d 1046, 1049–50 (Colo.1995) (holding that because "the length of time during which a person is subject to institutional custody is the primary measure of the harshness of any particular sentence," changing a six-year DOC sentence to eight years in community corrections constituted an impermissible sentence increase for purposes of Crim.P. 35(b) ); *People v. Hoecher,* 822 P.2d 8, 12 (Colo.1991) (explaining that because "an offender sentenced to a community correctional facility is confined in a very real sense during the period of time in which the offender remains on residential status," a court must credit the offender for time served as a resident at a community corrections facility).[5]

Because of the similarities between a community corrections sentence and a DOC sentence, resentencing under subsection (1)(e) is part of a transfer procedure that follows after a community corrections facility rejects an offender. A community corrections facility may reject an offender after acceptance for any reason or no reason at all. *See* § 17–27–104(3), C.R.S. (2007); *People v. Rodriguez,* 55 P.3d 173, 174 (Colo.App.2002). Following the rejection, the offender must be provided with an administrative review pro-

there could be some ultimate cost savings with this flexibility to reduce the sentences of those people directly placed in community corrections by judges.

*H. Comm. Hearing* (emphasis added). The chairman then asked Mr. Linke to point her to the section of the bill that addressed this issue. In response, Mr. Linke read the provision, section 17–27–105(1)(h), verbatim: "The sentencing court shall have the authority to modify the sentence of an offender who has been directly sentenced to a community corrections program in the same manner as if the offender had been placed on probation." *Id.*

**3.** The relevant part of section 18–1.3–301(1)(a) provides: "Any judge of a district court *may refer*

any offender convicted of a felony *to a community corrections program* unless such offender is required to be sentenced pursuant to section 18–1.3–406(1) or a sentencing provision that requires a sentence to the department of corrections." (Emphasis added).

**4.** In sentencing an offender directly to a community corrections program, the "terms, lengths, and conditions" prescribed by the felony sentencing statute, section 18–1.3–401(1)(a)(V)(a), C.R.S. (2007), apply.

**5.** *Hoecher* was decided before section 18–1.3–301(1)(j) (formerly 17–27–105(1)(j) ) was enacted.

cess. *See* §§ 17–27–103(7), –104(5), C.R.S. (2007). The administrative review process includes written notification to an offender of the decision to reject and terminate program placement, a brief explanation of the reason for the termination, instructions for the offender to request review of the action of the community corrections board or community corrections program, and a method for the community corrections board or community corrections program to informally review the rejection and termination. § 17–27–102(1), C.R.S. (2007). If the community corrections board or the program fails to provide the review, the sentencing court is authorized to do so. *See Benz v. People*, 5 P.3d 311, 315–16 (Colo.2000).[6] Following the review process, the offender is transferred to a county jail or temporarily remains in the facility pending a transfer order. *See* § 17–27–104(5), (6). At a subsequent resentencing hearing, the court determines whether the offender should remain in community corrections or be removed. *See* §§ 17–27–104(6), 18–1.3–301(1)(e). Subsection (1)(e) does not provide any details about the resentencing hearing and does not set out any requirements with which the hearing must comply. *See* § 18–1.3–301(1)(e).

In contrast, a probation modification or revocation hearing, which the majority attempts to apply to resentencing under subsection (1)(e), is subject to statutory and due process requirements. Before explaining those requirements in detail, I note that the majority refers to an incorrect provision of the probation statute. The majority finds that section 16–11–206(5), C.R.S. (2007), applies to a subsection (1)(e) resentencing hearing because it governs resentencing of an offender who has violated a condition of probation. *See* maj. op. at 987.[7] However, since

subsection (1)(h) permits the court to "*modify* the sentence ... as if the offender had been placed on probation," it follows that the provision authorizing the court to *modify* an offender's probation, rather than revoke it, is applicable. Therefore, in my view, subsection (1)(h) references section 18–1.3–204(4), C.R.S. (2007), which governs modification of probation.

Section 18–1.3–204(4) permits the court to modify the terms of an offender's probation. Specifically, section 18–1.3–204(4) provides: "For good cause shown and after notice to the [offender], the district attorney, and the probation officer, and after a hearing if the [offender] or the district attorney requests it, the judge may reduce or increase the term of probation or alter the conditions or impose new conditions." Thus, the probation modification hearing must comply with due process. *Id.; see also People v. Frye*, 997 P.2d 1223, 1227 (Colo.App.1999) (noting that section 16–11–204(4), the identical predecessor of section 18–1.3–204(4), required a hearing and notice before conditions of probation could be changed).

A probation modification hearing is fundamentally different from a subsection (1)(e) hearing. Because the offender receives administrative review of the reasons for his termination from the community corrections program, the resentencing court only needs to determine whether to place the offender in another community corrections facility or transfer him to the DOC. Since the offender had a sentencing hearing when his community corrections sentence was originally imposed, the court may conclude that another sentencing hearing is not necessary. For that reason, subsection (1)(e) gives the court discretion not to hold a hearing at all. De-

---

6. Sections 17–27–103(7) and 17–27–104(5), (6) authorize the "referring agency" to provide the administrative review process. §§ 17–27–103(7), –104(5), (6). Where an offender is sentenced directly to community corrections, the sentencing court is the referring agency. *See* § 17–27–102(7).

7. Section 16–11–205(6) authorizes revocation of probation if "a violation of a condition of probation has been committed." *See* § 16–11–206(5). Thus, it only permits revocation for cause. In contrast, a community corrections facility may

terminate an offender for any reason or no reason at all. *See* § 17–27–104(3); *Rodriguez*, 55 P.3d at 174. Through subsection (1)(h), the majority would apply section 16–11–206(5) to subsection (1)(e) resentencing if the offender has been terminated for cause, *see* maj. op. at 987 n. 3, but not, by implication, if the offender is resentenced after termination without cause. If section 16–11–206(5) applies to subsection (1)(e) under some circumstances and does not apply under others, then subsection (1)(h) is not a useful interpretive tool.

spite that, the majority maintains that holding another hearing on the merits of the offender's termination from community corrections, this time governed by section 18–1.3–204(4), somehow allows an increase of the offender's sentence. However, nothing in subsection 18–1.3–204(4) or the majority opinion explains how the additional cause hearing would make the sentence increase permissible. The majority simply overlooks that the probation modification hearing is a cause hearing that does not apply to a subsection (1)(e) transfer. Requiring due process protections in a section 18–1.3–204(4) hearing is consistent with probation modification, but inconsistent with resentencing under subsection (1)(e), which focuses on determining the offender's next placement.[8]

To conclude, because subsections (1)(e) and (1)(h) are separate and distinct provisions and the legislative history of subsection (1)(h) makes it clear that the purpose of that provision was to allow sentence reductions rather than sentence increases, the majority's interpretation of subsection (1)(e) by possible implication of subsection (1)(h) is ambiguous in itself. Additionally, applying the requirements of the probation modification hearing to resentencing under subsection (1)(e) contradicts the community corrections statute because it merely requires another cause hearing where one has already been provided. Thus, it does not make a sentence increase permissible.

I now turn to prior law and the legislative history to discern the correct meaning of subsection (1)(e). *See* § 2–4–203, C.R.S. (2007); *People v. Luther,* 58 P.3d 1013, 1015 (Colo.2002). I conclude that prior law clearly prohibited a sentence increase at resentencing, and the legislative history of subsection (1)(e)'s pertinent predecessor does not contain the slightest indication that the General Assembly intended to make such a fundamental change so as to allow an increase of an offender's sentence at resentencing.

The direct predecessor of subsection (1)(e) was enacted in 1993 as part of a complete repeal and reenactment of the community corrections statute. Prior to the reenactment, the pertinent provision, section 17–27–103(3), C.R.S. (1992), expressly prohibited the sentencing court from increasing the offender's sentence at resentencing, and provided that no hearing prior to resentencing was necessary. § 17–27–103(3), C.R.S. (1992). The relevant part of section 17–27–103(3) stated:

> The sentencing court is authorized to make appropriate orders for the transfer of such offender to the department and to resentence such offender and *impose any sentence* which might originally have been imposed *without increasing the length of the original sentence.* The sentencing court is *not required to provide the offender with an evidentiary hearing* prior to resentencing.

*Id.* (emphasis added). The prohibition against sentence increases had been part of Colorado law for fourteen years prior to the enactment of the 1993 statute.[9]

---

8. The majority also concludes that Romero's resentencing hearing would have met the due process requirements of the probation revocation statute, section 16–11–206(5). *See* maj. op. at 987 n. 4. I do not see how the majority could have reached its summary conclusion. At the probation revocation hearing under section 16–11–206(5), the court must determine whether a violation of a condition of probation has been committed. § 16–11–206(5). Additionally, the prosecution has the burden to establish the violation by a preponderance of the evidence, and, if the violation resulted from the commission of a criminal offense, the prosecution must prove it beyond a reasonable doubt. § 16–11–206(3). The probationer's due process guarantees include a written notice of the claimed violations of probation, disclosure to the probationer of the evidence against him, an opportunity to be heard in person and to present witnesses and documen-

tary evidence, the right to confront and cross-examine adverse witnesses, a neutral and detached hearing body, and a written statement by the fact finders as to the evidence relied on and reasons for revoking probation. *See People v. Atencio,* 186 Colo. 76, 78–79, 525 P.2d 461, 462 (1974). At Romero's resentencing hearing, his violation of the conditions of the community corrections placement was not at issue. Both prosecution and defense casually stated that Romero was terminated due to a positive urine test, and the hearing focused on Romero's resentencing. Thus, the majority's conclusion that Romero's hearing would have satisfied the due process requirements is completely unwarranted.

9. Community corrections became part of Colorado's sentencing scheme in 1974. *See* ch. 77, sec. 1, §§ 105–10–101 to –110, 1974 Colo. Sess. Laws

In 1993, through House Bill 93–1233, the General Assembly repealed and reenacted the entire community corrections statute. *See* ch. 187, sec. 1, §§ 17–27–101 to –108, 1993 Colo. Sess. Laws 708, 718. The purpose of the reenactment was to clarify ambiguities and make the statute more logical. *H. Comm. Hearing; Cmty. Corr. Legislation Overview*, 59th Gen. Assemb., 1st Reg. Sess., at 1 (Colo.1993) [hereinafter *Overview* ]. Additionally, House Bill 93–1233 introduced certain substantive changes. *See H. Comm. Hearing* (testimony of Rep. Romero); *Overview*, at 1. Pertinent to the issue before us, the bill also modified the language of section 17–27–103(3) and renumbered it as section 17–27–105(1)(e). *See* ch. 187, sec. 1, § 17–27–105(1)(e), 1993 Colo. Sess. Laws 708, 714. Specifically, section 17–27–105(1)(e) consolidated the language of section 17–27–103(3), stating: "If an offender is rejected after acceptance by a community corrections board or a community corrections program, the court may resentence the offender without any further hearing so long as the offender's sentence does not exceed the sentence which was originally imposed upon the offender." § 17–27–105(1)(e), C.R.S. (1993).[10] This language has remained the same since the 1993 amendment and is now before us.[11]

The historical development of the statute and the legislative history indicate that the General Assembly did not intend to overturn the existing prohibition against increasing an offender's sentence at resentencing when it consolidated the language of section 17–27–103(3), C.R.S. (1992), into section 17–27–105(1)(e), C.R.S. (1993). The prohibition against increasing a sentence at resentencing had been part of Colorado law for fourteen years, since the court of appeals decided *Johnson* in 1979. An amendment permitting a sentence increase so long as the offender is afforded a hearing would have been a fundamental change reversing more than a decade of well-settled law and sentencing practices. After House Bill 93–1233 was introduced, the House and Senate Judiciary Committees reviewed the bill in great detail. *H. Comm. Hearing; Hearing on H.B. 93–1233 before S. Judiciary Comm.*, 59th Gen. Assemb., 1st Reg. Sess. (Colo.1993) [hereinafter *S. Comm.*

321. While the General Assembly amended the community corrections statutes frequently, only the amendments that occurred in 1984 and 1989 are relevant for the explanation of the longstanding prohibition against sentence increases. Prior to 1984, the court had the authority to order the transfer of an offender after he was rejected by a community corrections facility. § 17–27–103(3), C.R.S. (1983). However, it was not clear whether the court could also resentence the offender and, if so, whether it could increase the original sentence at resentencing. *See id.* The court of appeals addressed this issue in *People v. Johnson*, holding that since the statute did not "authorize[ ] the court to increase the length of the original sentence, [the court would] not judicially legislate such language into the [statute]." 42 Colo.App. 350, 352, 594 P.2d 601, 602–03 (1979). Thus, since 1979, case law has prohibited the sentencing court from increasing the offender's sentence upon resentencing.

In 1984, the General Assembly incorporated the holding of *Johnson*, 42 Colo.App. at 352, 594 P.2d at 602–03, in section 17–27–103(3), a predecessor of subsection (1)(e). *See* ch. 128, sec. 1, § 17–27–103(3), 1984 Colo. Sess. Laws 529, 529. Specifically, section 17–27–103(3) granted the court the authority to resentence an offender following a rejection by community corrections and expressly prohibited an increase of the offender's sentence. *Id.* However, section 17–27–103(3) did not state whether the court had to provide the offender a hearing prior to resentencing. We later concluded in *Wilson v. People* that the resentencing procedure under section 17–27–103(3) required an opportunity for the offender to present relevant information and to be heard. 747 P.2d 638, 643 (Colo.1988), *superseded by statute*, ch. 149, sec. 7, § 17–27–103(3), 1989 Colo. Sess. Laws 862, 864. In response to *Wilson*, the General Assembly amended section 17–27–103(3) again in 1989, expressly providing that no hearing prior to resentencing was required. *See* ch. 149, sec. 7, § 17–27–103(3), 1989 Colo. Sess. Laws 862, 864. Thus, after the 1989 amendment, section 17–27–103(3) prohibited the sentencing court from increasing the offender's sentence and provided that no hearing prior to resentencing was necessary. In sum, Colorado law expressly prohibited sentence increases at resentencing from 1979, when the court of appeals decided *Johnson* and continued to do so for fourteen years prior to the enactment of the 1993 statute.

10. Section 17–27–105(1)(e) appeared in the bill as originally introduced and was not amended during the legislative process.

11. In 2002, section 17–27–105(1)(e) was relocated and renumbered as section 18–1.3–301(1)(e). *See* ch. 318, sec. 2, § 18–1.3–301(1)(e), 2002 Colo. Sess. Laws 1365, 1387.

*Hearing* ].[12]  Furthermore, to aid the committee members in understanding the implications of the bill, an overview of major amendments effected by House Bill 93–1233 was distributed both at the House and Senate Committee hearings.  The Overview listed seven major changes to the existing statute.[13]

Despite the thorough review of the bill by both committees, nothing in the recordings of the committee hearings or the legislative summaries prepared by the Legislative Council suggests that the committees referred to any change concerning resentencing after rejection.  *H. Comm. Hearing; S. Comm. Hearing; Leg. Summary,* S. Judiciary Comm., 59th Gen. Assemb., 1st Reg. Sess., at 5–6 (Colo.1993).[14]  The Overview, likewise, did not reference any changes concerning resentencing of an offender after rejection by community corrections, or section 17–27–105(1)(e).  *See Overview,* at 1. If the General

Assembly intended to overturn the prohibition against sentence increases, such a fundamental change hardly would have passed through the committee hearings without a single reference made to it.  Further, such a major change would more likely have been made directly, rather than by implication from one of two possible interpretations.[15]

In short, prior law expressly prohibited sentence increases at resentencing, the purpose of the 1993 amendment was primarily to clarify and reorganize the existing statute, and there is no evidence of contrary legislative intent with respect to section 17–27–105(1)(e).  Therefore, I conclude that the General Assembly did not intend to change the existing prohibition against sentence increases when it consolidated the language of section 17–27–103(3), C.R.S. (1992), in section 17–27–105(1)(e), C.R.S. (1993).

**12.**  The House Judiciary Committee noted the changes in the community corrections system since the original community corrections statute was enacted and the need for a clearer and better organized statute.  *H. Comm. Hearing.* Larry Linke of the Division of Criminal Justice explained the changes against the existing statute page-by-page, section-by-section.  *Id.* (testimony of L. Linke).  Three other witnesses testified.  *Id.* The committee members inquired into substantive changes which included time credits for offenders sentenced to community corrections, administrative procedures due on an offender's rejection from the program, retention of courts' jurisdiction and courts' authority to reduce a sentence to community corrections, and immunity of community corrections boards and their members from civil liability.  *Id.* The committee members also examined operational and administrative issues such as funding and budgeting of community corrections, contract administration, and interaction between community corrections and the DOC.  *Id.* The Senate Judiciary Committee reviewed the bill in a similar manner.  *S. Comm. Hearing.*

**13.**  The Overview listed the following "highlights of the bill": clarification of the role and authority of community corrections boards;  immunity of the boards and their members from civil liability;  clarification of procedures to be followed by the board or program if an offender is rejected;  time credits for sentence reductions for offenders sentenced directly to community corrections made consistent with those of offenders in the DOC;  judges maintain jurisdiction of cases involving direct placements to community corrections throughout the length of the sentence;  clarification of the role of probation and parole

officers with respect to community corrections; removal of time limitation regarding the length of placement of parolees in community corrections;  outline of duties and authority of the state contracting agency;  and authorization of administrative funds for local government units.  *See Overview,* at 1.

**14.**  Due to poor sound quality, parts of the Senate Judiciary Committee hearing are inaudible.

**15.**  To the extent any possibility remains that the General Assembly intended to overturn the sentence increase prohibition despite never articulating such intent, the legislative history of the 1984 and the 1989 amendments precludes such an argument.  Although the 1984 amendment merely incorporated existing case law, both the House and the Senate Judiciary Committees discussed this change at that time.  *Hearing on H.B. 1068 before H. Judiciary Comm.,* 54th Gen. Assemb., 1st Reg. Sess. (Colo.1984); *Hearing on H.B. 1068 before S. Judiciary Comm.,* 54th Gen. Assemb., 1st Reg. Sess. (Colo.1984).  Similarly, in 1989, the Senate Judiciary Committee discussed the amendment eliminating the hearing requirement mandated a year earlier by *Wilson. Hearing on H.B. 1091 before S. Judiciary Comm.,* 57th Gen. Assemb., 1st Reg. Sess. (Colo.1989). In light of the attention the 1984 and the 1989 amendments received in the committees in 1984 and 1989 and the complete lack of reference to the 1993 amendment of section 17–27–103(3) during the 1993 committee hearings, it is far more likely that the General Assembly did not intend to overturn the prohibition against sentence increases when it passed House Bill 93–1233.

Turning to our case law, I disagree with the majority's complete dismissal of our discussion of the prohibition of a sentence increase upon resentencing in *People v. Johnson*, 13 P.3d 309, 314–15 (Colo.2000). *See* maj. op. at 13. Since our analysis was inseparable from the presumption that section 17–27–105(1)(e)[16] prohibited a sentence increase irrespective of whether the court held a hearing, *Johnson* implicitly held that any sentence increase is statutorily prohibited. *See Johnson*, 13 P.3d at 314–15. In that case, an offender was sentenced to six years in community corrections. *Id.* at 311. He was later terminated from the program, and the trial court resentenced him to six years in the DOC plus three years of mandatory parole. *Id.* at 311–12. We held that the mandatory period of parole did not constitute a "sentence" within the meaning of section 17–27–105(1)(e), and therefore the offender's new sentence did not violate section 17–27–105(1)(e). *Id.* at 311, 315.

Although *Johnson* presented the issue of whether the term of mandatory parole constituted a sentence, it is simply incomplete to describe our statements concerning the prohibition of a sentence increase as dicta. In analyzing the consequences of the addition of mandatory parole to the defendant's sentence, we presumed, without analyzing section 17–27–105(1)(e), that "the court could not resentence [the offender] to a term that exceeded the [original] sentence." *Id.* at 314. We perceived the prohibition against a sentence increase to be so clear that we felt comfortable expressing it, as a premise to our analysis, in a conclusory manner.

Without the presumption that a sentence could not be increased, the issues and analysis in *Johnson* would have been different. As an initial matter, if we had any doubt about the meaning of section 17–27–105(1)(e), we would have addressed that ambiguity expressly. Had we concluded that section 17–27–105(1)(e) permitted a sentence increase on the condition that the court granted the offender a hearing, we would have necessarily examined, as part of our analysis, whether the offender had been in fact afforded a hearing. Had we found that the trial court indeed held a hearing prior to resentencing, we would not have reached the ultimate issue of *Johnson*—whether the addition of the term of mandatory parole constituted a sentence increase—because the hearing would have rendered the potentially increased sentence permissible. On the other hand, had we found that the court did not hold a hearing, we would have explained that the lack of a hearing required us to determine whether mandatory parole constituted a sentence. Thus, since the presumption was an inseparable component of our analysis, *Johnson* implicitly held that section 17–27–105(1)(e) prohibited a sentence increase at resentencing.

Finally, I emphasize that the rule of lenity requires this court to interpret subsection (1)(e) as prohibiting sentence increases. An interpretive tool of last resort, the rule of lenity provides that a court must resolve ambiguities in a criminal statute in favor of the defendant. *Frazier v. People*, 90 P.3d 807, 811 (Colo.2004). The majority's resort to interpretation by implication shows the ambiguity present in subsection (1)(e). Therefore, while I conclude that prior law and the legislative history provide ample guidance to discern the meaning of subsection (1)(e), the majority's analytical approach requires it to resolve the ambiguity in favor of the defendant and read subsection (1)(e) as prohibiting sentence increases upon resentencing.

To conclude, because the General Assembly did not intend to overturn prior law when it enacted section 17–27–105(1)(e) in 1993 and our holding in *Johnson* acknowledged this interpretation of subsection (1)(e), I would hold that subsection (1)(e) does not permit the court to increase the offender's sentence upon resentencing even if the court affords the offender a hearing. Consequently, I would not reach the troublesome issue whether Romero's increased sentence violated double jeopardy, which the majority summarily dismisses with the

**16.** Section 17–27–105(1)(e), C.R.S. (1999), which we applied in *Johnson*, was the predecessor of subsection (1)(e). The language of section 17–27–105(1)(e) is identical to the current version of subsection (1)(e).

notion that an offender does not have an expectation of finality in a sentence to community corrections. The majority's hasty conclusion ignores the close similarities between community corrections sentences and the DOC sentences, and the well-settled principle that an increase of an offender's DOC sentence, after he began serving it, would violate double jeopardy.

In the case before us, Romero was rejected for allegedly violating the rules of the program and may have already completed his DOC sentence. However, the sentence increase that the majority's holding sanctions will also apply to offenders sentenced to lengthy terms at community corrections, and placed in non-residential programs. Such offenders terminated by community corrections through no fault of their own, as a result of the majority's holding today, are regarded as having no expectation of finality in their sentence and may be resentenced to an increased sentence at the DOC.

In my view, neither the majority's interpretation nor its consequences were intended by the General Assembly.

Accordingly, I dissent.

I am authorized to state that Chief Justice MULLARKEY and Justice BENDER join in the dissent.