The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
November 21, 2019

## 2019COA174

**No. 19CA0976, *People v. Scott* — Crimes — Escape; Criminal
Law — Sentencing**

In this prosecution appeal, a division of the court of appeals
holds that the General Assembly did not legislatively overrule *People
v. Andrews*, 871 P.2d 1199 (Colo. 1994), concerning the mandatory
minimum sentence for the crime of escape, by its 1995 amendment
to section 18-8-208, C.R.S. 2019. Therefore, because the division
concludes that *Andrews* is still binding authority, it affirms the trial
court's sentence.

Court of Appeals No. 19CA0976
Mesa County District Court No. 18CR1011
Honorable Brian J. Flynn, Judge

The People of the State of Colorado,

Plaintiff-Appellant,

v.

Cody Jay Scott,

Defendant-Appellee.

SENTENCE AFFIRMED

Division III
Opinion by JUDGE WEBB
Dunn and Lipinsky, JJ., concur

Announced November 21, 2019

Daniel P. Rubinstein, District Attorney, George Alan Holley II, Senior Deputy
District Attorney, Grand Junction, Colorado, for Plaintiff-Appellant

Megan A. Ring, Colorado State Public Defender, Elyse Maranjian, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellee

¶ 1     This prosecution appeal requires us to decide whether the General Assembly has legislatively overruled *People v. Andrews*, 871 P.2d 1199 (Colo. 1994), concerning the mandatory minimum sentence for the crime of escape (F3), by its 1995 amendment to section 18-8-208, C.R.S. 2019. Because we conclude that *Andrews* is still binding authority, we affirm the trial court's sentence, which it imposed based on *Andrews*.

## I. Background

¶ 2     Under section 16-12-102(1), C.R.S. 2019, the District Attorney for the 21st Judicial District appeals the four-year sentence (plus mandatory parole) imposed on defendant, Cody Jay Scott, following his guilty plea — without a sentencing concession — to escape, in violation of section 18-8-208(2). Specifically, the District Attorney contends the trial court erred as a matter of law in concluding based on *Andrews* that the mandatory minimum sentence was four years, under section 18-1.3-401(1)(a)(V)(A.1), C.R.S. 2019, rather than eight years under section 18-1.3-401(8)(a)(IV). Scott concedes preservation.

1

## II. Standard of Review

¶ 3     The parties agree that we review interpretation of a sentencing statute de novo. *See, e.g.*, *People v. Wylie*, 260 P.3d 57, 60 (Colo. App. 2010) ("To the extent defendant's argument requires us to interpret statutory provisions, we do so de novo."). That review is guided by several familiar principles.

- A court's principal task when construing a statute is to give effect to the General Assembly's intent, as determined primarily from the plain language of the statute. *Romero v. People*, 179 P.3d 984, 986 (Colo. 2007).

- The court construes the statute as a whole in an effort to give consistent, harmonious, and sensible effect to all its parts, and reads words and phrases in context and according to the rules of grammar and common usage. *People v. Banuelos-Landa*, 109 P.3d 1039, 1041 (Colo. App. 2004).

- If the statutory language is clear and unambiguous, the court does not engage in further statutory analysis, much less consider extrinsic information. *Romero*, 179 P.3d at 986.

- "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific

context in which that language is used, and the broader context of the statute as a whole."  *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997); *see also Klinger v. Adams Cty. Sch. Dist. No. 50,* 130 P.3d 1027, 1031 (Colo. 2006).

- A statutory interpretation leading to an illogical or absurd result will not be adopted, and courts avoid constructions that are at odds with the overall legislative scheme.  *See People v. Tixier*, 207 P.3d 844, 847 (Colo. App. 2008).

### III.  Law

¶ 4   The sentencing range for a class 3 felony is four to twelve years.  § 18-1.3-401(1)(a)(V)(A.1).  But the presence of one or more "extraordinary aggravating circumstances" requires an enhanced minimum sentence of "at least the midpoint in the presumptive range" — which is eight years for a class 3 felony. § 18-1.3-401(8)(a).  Relevant here, one such aggravating factor is that "[t]he defendant was under confinement . . . or in any correctional institution as a convicted felon, or an escapee . . . at the time of the commission of a felony."  § 18-1.3-401(8)(a)(IV).  And at least on appeal, Scott does not dispute that he "was under

confinement or in any correctional institution" when he walked away from a halfway house.

¶ 5     The first Colorado case to address whether a defendant's conviction for escape "triggered the operation of this enhanced sentencing provision" was *People v. Russell,* 703 P.2d 620, 622 (Colo. App. 1985), *abrogated on other grounds by People v. Sanchez,* 769 P.2d 1064 (Colo. 1989).  Unsurprisingly, the Attorney General argued that this enhancement provision applied "because commission of felony escape is a felony committed while under confinement and continued while an escapee."  *Id.*

¶ 6     The division disagreed.  It explained that under this construction, "conviction of the class 3 felony of escape would always require imposition of a sentence in excess of the presumptive range specified for such class of felonies."  *Id.*  Instead, the division held that the enhancement provision "does not apply to the crime of escape, but rather it applies to other felonies committed while under confinement or to other felonies committed after escape from confinement."  *Id.*

¶ 7     Almost a decade later, and without any intervening legislation, our supreme court addressed application of the enhancement

4

provision to escape in *Andrews*.  Again, the Attorney General argued that, "because the defendant was under confinement as a convicted felon at the time he committed the felony of attempted escape, the sentence enhancement provision applies."  871 P.2d at 1201.  The supreme court disagreed.

¶ 8    Echoing *Russell,* the court explained that, under the Attorney General's construction, the enhancement provision "would apply automatically to every individual convicted of class 3 felony escape." *Id.* at 1202.  And such a construction was unacceptable because it "would effectively render meaningless the classification of the felony as class 3, since in each and every case an enhanced sentence would be imposed upon the defendant."  *Id.*

¶ 9    The supreme court went on to hold that "the legislature did not intend to punish escape and attempted escape through application of the enhancement provision . . . ."  *Id.* at 1203.  In doing so, it noted "that since it was decided in 1985, this court has addressed the *Russell* decision on at least four occasions, and while limiting its application to crimes of escape we have not altered its force."  *Id.*; *see also People v. Phillips*, 885 P.2d 359, 360 (Colo. App. 1994) ("According to *Andrews* . . . automatic aggravation of every

felony escape conviction would render meaningless the original statutory classification of that crime and that, therefore, it was contrary to the presumption that statutes are intended to be effective in their entirety.").

¶ 10　　Everyone would agree that the Colorado Court of Appeals must follow binding Colorado Supreme Court precedent. *See, e.g., In re Estate of Ramstetter*, 2016 COA 81, ¶ 40. So, if the story stopped here, under *Andrews* its ending would be obvious.

¶ 11　　But divisions have sometimes avoided this limitation by holding that because a supreme court decision has been legislatively overruled by the General Assembly, it is no longer binding. *See, e.g., People v. Bondurant*, 2012 COA 50, ¶ 75 ("We agree with other divisions of this court that the 1999 amendments legislatively overruled *Cooper* with respect to the intent element of burglary.").

¶ 12　　So, do we follow *Andrews* and affirm or conclude — as the District Attorney argues — that *Andrews* was overruled when the General Assembly added section 18-8-208(9) and reverse? We conclude that *Andrews* was not legislatively overruled.

### IV. The Continuing Vitality of *Andrews* in Light of Section 18-8-208(9)

¶ 13 According to the District Attorney, section 18-1.3-401(8)(a)(IV) mandates an enhanced sentence for escape because the General Assembly "clearly annunciated that it intended for escapes to be aggravated" by adding subsection (9) to section 18-8-208 the year after *Andrews* was announced. We begin with the plain language of section 18-8-208(9) but discover that it is not so clear.

### A. Section 18-8-208(9) is Ambiguous

¶ 14 When subsection (9) was added, it read: "The minimum sentences provided by sections 18-1-105, 18-1-106, and 18-1-107 respectively, for the violation of the provisions of this section *shall be mandatory, and the court shall not grant probation or a suspended sentence . . . .*" Ch. 240, sec. 16, § 18-8-208, 1995 Colo. Sess. Law 1255 (emphasis added). At that time, section 18-1-105(9)(a)(V), C.R.S. 1995, required — as section 18-1.3-401(8)(a)(IV) does now — an enhanced sentence if "[t]he defendant was under confinement . . . in any correctional institution as a

convicted felon, or an escapee . . . at the time of the commission of a felony."[1]

¶ 15    The District Attorney argues that the plain language of section 18-8-208(9) requires an enhanced sentence for escape.  Scott responds that section 18-8-208(9) does not address whether an escapee is subject to an enhanced sentence, but "rather what sentencing options are available to the court — specifically, that probation or a suspended sentence are not possibilities because the minimum sentences outlined in the sentencing statutes . . . are mandatory."

¶ 16    To be sure, differing *possible* interpretations of statutory language do not necessarily mean that the statute is ambiguous. *Cf. Klun v. Klun*, 2019 CO 46, ¶ 19 ("The mere fact that the parties may interpret the agreement differently, however, does not alone

---

[1] Section 18-1.3-401(8)(a)(IV), C.R.S. 2019, is substantially similar to former section 18-1-105(9)(a)(V), C.R.S. 1995, which was in effect when section 18-8-208(9), C.R.S. 2019, was enacted.  *See People v. Willcoxon*, 80 P.3d 817, 821 (Colo. App. 2002) (recognizing that former section 18-1-105(9)(a)(V) is now codified at section 18-1.3-401(8)(a)(IV)), *overruled on other grounds by People v. Adams*, 2016 CO 74.  The cross-reference in section 18-8-208(9) has since been amended to change, among others, section 18-1-105 to section 18-1.3-401.

establish an ambiguity."). But as explained below, both interpretations are *reasonable.* And "[a] statute is ambiguous if it is susceptible to multiple reasonable interpretations." *Carrera v. People*, 2019 CO 83, ¶ 18.

¶ 17    On the one hand, the General Assembly's use of the phrase "shall be mandatory" in section 18-8-208(9) after referencing section 18-1-105 could mean that *all* of section 18-1-105 was mandatory for escape, including the enhanced sentencing provision of section 18-1-105(9)(a)(V). On the other hand, the General Assembly cross-referenced three sentencing statutes generally — those for felonies, misdemeanors, and petty offenses — followed by the language "shall be mandatory, and the court shall not grant probation or a suspended sentence." § 18-8-208(9). So, subsection (9) could be read as requiring a sentence under whichever of those statutes applied, while removing any discretion for the court to grant probation or impose a suspended sentence.

¶ 18    Of course, the General Assembly could have avoided this ambiguity by expressly declaring its intent to overrule *Andrews*. *See* § 2-4-214, C.R.S. 2019 ("[T]he rule of statutory construction expressed in the Colorado supreme court decision entitled *People v.*

9

*McPherson*, 200 Colo. 249, 619 P.2d 38 (1980), . . . has not been adopted by the general assembly and does not create any presumption of statutory intent."). But because it did not, at least expressly, we must look beyond the language of section 18-8-208(9) to determine the meaning. *See In re Marriage of Garrett*, 2018 COA 154, ¶ 29 ("We must engage in [an] examination of legislative intent because the statute is ambiguous.").

B. The General Assembly Did Not Clearly Intend to Overrule *Andrews*

¶ 19     "[W]hen the General Assembly amends a statute, we presume that it is aware of published judicial precedents construing the prior version of the statute." *Przekurat v. Torres*, 2016 COA 177, ¶ 23. So, in weighing the District Attorney's argument that the General Assembly overruled *Andrews* by adding section 18-8-208(9) after that opinion was announced, we recognize that the General Assembly could have intended to disavow that case without expressly mentioning it.

¶ 20     *Passamano v. Travelers Indemnity Company*, 882 P.2d 1312, 1323 (Colo. 1994), is illustrative. There, the supreme court held that section 10-4-609(1), C.R.S. 1994, applied to automobile rental

companies. Then the General Assembly amended section 10-4-609(1) as follows: "This subsection (1) shall not apply to motor vehicle rental agreements or motor vehicle rental companies." *See* Ch. 51, sec. 4, § 10-4-609(1)(b), 1995 Colo. Sess. Laws 143. In a later case, the supreme court explained that "[t]his amendment was inconsistent with our holding in *Passamano* and clearly implied abrogation." *Vaughan v. McMinn*, 945 P.2d 404, 409 (Colo. 1997).

¶ 21    But the language of section 18-8-208(9) does not similarly imply a legislative intent to overrule *Andrews*. *See id.* (explaining that "[e]ven if a connection could be imagined between *Savio* and the 1991 amendment to section 8-43-304(1)," the standard for abrogation "requires more than an imagined connection"). Consider that had the General Assembly intended to overrule *Andrews* — albeit without mentioning the case — it could have referenced section 18-1-105(9)(a)(V) rather than more broadly citing to section 18-1-105.

¶ 22    Given the lack of textual support for the District Attorney's position, you might wonder whether legislative history provides him with the necessary explanation. *See Gallegos v. Phipps*, 779 P.2d 856, 861 (Colo. 1989) ("According to the legislators who sponsored

11

House Bill 1205, which later became section 13-21-115, the common-law categories were reestablished because the reasonable person standard created by *Mile High Fence* [*v. Radovich,* 175 Colo. 537, 489 P.2d 308 (1971),] led to unpredictable and inequitable results."); *see also In re Marriage of Ciesluk,* 113 P.3d 135, 141 (Colo. 2005) ("[T]his reading of the statute is equally consistent with the legislative history of the statute, which indicates that legislators proposed the amendments in an effort to eliminate the *Francis* test."). It does not.

¶ 23     The legislative history does not mention *Andrews. Compare In re Marriage of Gallo,* 752 P.2d 47, 50 (Colo. 1988) ("The legislative history of the Protection Act makes it clear that the principal purpose of the legislation was to legislatively overrule the *McCarty* decision."), *with People v. Carey,* 198 P.3d 1223, 1230 (Colo. App. 2008) ("The legislative history of the 1994 amendment includes no discussion of *Bossert.*").

¶ 24     Rather, the legislative history paints a clear picture that the General Assembly's focus was on correcting a disparity between escape, which allowed for probation or a suspended sentence, and attempted escape, which did not, although the latter offense is the

12

less serious. In a hearing before the Senate Judiciary Committee, Ray Slaughter — then the Director for the Colorado District Attorney's Counsel — explained that the addition of section 18-8-208(9)

> corrects an error between escape and attempted escape. Currently . . . if you are convicted of escape from a penitentiary or a jail facility . . . you can get probation. Which doesn't make a lot of sense because you've just escaped from jail. But you are eligible for probation. On the other hand, if you are convicted of attempting to escape, but not getting away with it, you are not eligible for probation. We felt that you probably didn't want these people eligible for probation in either case. And in fact, the practice, of course, is to take the plea to attempted escape to preclude any possibility of probation. That is the practice. So, [the amendment] remedies that by simply stating that with a conviction for escape you're not eligible for probation.

Hearings on H.B. 1070 before the S. Judiciary Comm., 60th Gen. Assemb., 1st Sess. (Apr. 5, 1995).

¶ 25 This reason was echoed by Senator Dorothy Wham during the second reading of the bill on the senate floor. The senator explained that the bill overall "deals with . . . problems that have come up in the substantive criminal law." And regarding section 18-8-208(9) specifically, she explained:

13

> If a defendant is convicted of attempt to escape, the sentence is mandatory and the court shall not grant probation or a suspended sentence. This was not included in the greater offense of escape. And this section corrects that.

Second Reading of H.B. 1070 before the Senate, 60th Gen. Assemb., 1st Sess. (Apr. 28, 1995).

¶ 26    These statements of purpose are particularly persuasive in resolving ambiguity. *See* § 2-4-203(1)(a), C.R.S. 2019 ("If a statute is ambiguous, the court, in determining the intention of the general assembly, may consider . . . [t]he object sought to be attained . . . .").

¶ 27    Despite all of this, the District Attorney argues that the General Assembly's intent to enhance the sentence for escape is shown by the lack of a comparable amendment to section 18-8-208.1, C.R.S. 2019, sentencing for attempted escape. But when section 18-8-208(9) was added, the attempted escape statute already required that "the minimum sentences . . . of this section shall be mandatory, and the court shall not grant probation or a suspended sentence, in whole or in part . . . ." § 18-8-208.1(5), C.R.S. 1995. Because — as the legislative history explains — the

14

purpose of section 18-8-208(9) was to correct a disparity between escape and attempted escape, precise drafting would amend only the escape statute.

¶ 28　For these reasons, we discern no basis for holding that the General Assembly intended to overrule *Andrews* by adding section 18-8-208(9).　Therefore, we conclude that the trial court acted within its discretion in sentencing defendant to four years' imprisonment.

## V.　Conclusion

¶ 29　The sentence is affirmed

JUDGE DUNN and JUDGE LIPINSKY concur.

15