The PEOPLE of the State of
Colorado, Petitioner

v.

James Brian DISHER, Respondent.

No. 07SC1088.

Supreme Court of Colorado,
En Banc.

Feb. 16, 2010.

Don Quick, District Attorney, Seventeenth Judicial District, Michael J. Milne, Senior Deputy District Attorney, Brian S. Mason, Senior Deputy District Attorney, Brighton, Colorado, Attorneys for Petitioner.

No Appearance on Behalf of Respondent.

Colorado Organization for Victim Assistance, Colorado Crime Victims Legal Clinic, Meghan P. Saleebey, Davis Graham & Stubbs LLP, Thomas S. Nichols Denver, Colorado, Attorneys for Amici Curiae Colorado Coalition Against Domestic Violence, National Coalition Against Domestic Violence, Colorado Organization for Victim Assistance, Colorado Crime Victims Legal Clinic, and Colorado Women's Bar Association.

Colorado District Attorneys' Council, Ted C. Tow, III, Denver, Colorado, Attorneys for Amicus Curiae Colorado District Attorneys' Council.

Douglas K. Wilson, Colorado State Public Defender, Joseph Paul Hough, Deputy State Public Defender, Denver, Colorado, Attorneys for Amicus Curiae Office of the Colorado State Public Defender.

Chief Justice MULLARKEY delivered the Opinion of the Court.

## I. Introduction

The Adams County District Attorney petitioned for certiorari, challenging the district court's affirmance of a county court ruling that no domestic violence evaluation could be required of defendant James Brian Disher when he was convicted of harassing a woman whom he had dated. Under the relevant statute, the perpetrator of a crime and his or her victim must be, or have been, in an "intimate relationship" for the crime to constitute domestic violence. § 18–6–800.3, C.R.S. (2009). The county court held that evidence of a sexual relationship must be presented before a court can find that an intimate relationship exists. Because the county court heard no evidence of a sexual relationship, and therefore found no intimate relationship, the court ruled that Disher could not be required to undergo a domestic violence evaluation after he was convicted of harassing the victim. On appeal the district court upheld the county court ruling.

We reverse the district court and hold that evidence of a sexual relationship is not necessary to establish the existence of an intimate relationship.

## II. Facts and Procedural History

In early January, 2006, the victim M.P. was a property manager at an apartment complex and lived with her children in one of the complex's apartments. Her relationship with Disher had ended the previous Christmas. Disher began calling M.P. on January 3 and made 117 calls to her phone over the course of that day and the next. He entered her office in the afternoon of January 4 but left when she asked. The calls continued even after M.P. called Disher around 11:30 p.m. on January 4 and asked him to stop.

Shortly after midnight, Disher came to M.P.'s apartment and entered uninvited. He demanded they sit down and talk, but M.P. refused and asked him to leave. He stayed, yelling obscenities and waking her children who had been asleep upstairs. Eventually M.P. left the apartment to ask a security guard parked nearby for help. When the security guard arrived he told Disher to leave. Disher refused and called 911, stating that he was being thrown out of a residence. The security guard also called 911, and the police removed Disher following a short struggle.

After a bench trial, the county court convicted Disher of harassment and obstructing a police officer. Despite testimony from M.P. that she and Disher had "dated exclusively" for a time, and that the relationship had terminated shortly before he began harassing her, the court held that there was no evidence of an intimate relationship because there was no testimony about a sexual relationship. Without evidence of a sexual relationship, the court refused to order a domestic violence evaluation of Disher. On appeal, the district court upheld the county court's

ruling, holding that an intimate relationship is synonymous with a sexual relationship and a domestic violence evaluation is not required unless the parties had a sexual relationship.

## III. Jurisdiction and Standard of Review

This court has certiorari review over cases that originated in a county court and were appealed to a district court. §§ 13–4–102, 13–6–310, C.R.S. (2009). We granted the district attorney's certiorari petition to review the district court's decision in this case.

 This case calls for us to interpret the meaning of an "intimate relationship," as defined in section 18–6–800.3(2). Statutory interpretation is a question of law that we review de novo. *Klinger v. Adams County Sch. Dist. No. 50,* 130 P.3d 1027, 1031 (Colo. 2006). When interpreting statutes, our task is to give effect to the intent of the general assembly and the purpose of the legislative scheme. *Id.; People v. Yascavage,* 101 P.3d 1090, 1093 (Colo.2004). First, we look to the language of the statute itself; absent some ambiguity we look no further. *Yascavage,* 101 P.3d at 1093. If the language is ambiguous, we rely on other factors, including: legislative history, the consequences of a given construction, and the end to be achieved by the statute. *Id.*

## IV. Analysis

Section 18–6–800.3 defines domestic violence as:

> an act or threatened act of violence upon a person with whom the actor is or has been involved in an intimate relationship. "Domestic violence" also includes any other crime against a person, or against property, including an animal, or any municipal ordinance violation against a person, or against property, including an animal, when used as a method of coercion, control, punishment, intimidation, or revenge directed against a person with whom the actor is or has been involved in an intimate relationship.

§ 18–6–800.3(1), C.R.S. (2009) (changes from the 2006 version do not affect this case). The statute defines an "intimate relationship" as: "a relationship between spouses, former spouses, past or present unmarried couples, or persons who are both the parents of the same child regardless of whether the persons have been married or have lived together at any time." § 18–6–800.3(2).

Under Colorado's domestic violence statute, domestic violence is not its own separate crime. When the elements of the statute are met, a judge may find that a crime committed by a defendant constitutes domestic violence. § 18–6–801, C.R.S. (2009). A finding of domestic violence leads to a sentence enhancer requiring the defendant to complete a treatment evaluation and a treatment program in addition to serving whatever sentence the defendant receives for the underlying crime. *Id.*

### A.

To the extent that the statute does not directly address the issue of sexual relationships, it contains some ambiguity. However, there is nothing in the text to support Disher's contention that, for the purposes of the law, a relationship is not intimate unless it is sexual. The meaning of the word "intimate" is not synonymous with "sexual." Intimacy is a broader concept that includes, but is not limited to, sexual intimacy. The word "intimacy" can be modified by the word "sexual" to specifically denote intimacy of a sexual nature, but intimacy itself is more expansive than just sexual intimacy. Intimate means "marked by close acquaintance, or association, or familiarity." *The American Heritage Dictionary of the English Language* 917 (4th ed.2000). "Sexual" is more narrowly defined as "of, relating to, involving, or characteristic of sex, sexuality, the sexes, or the sex organs and their functions." *Id.* at 1596.

The statute does not narrow the dictionary definition of "intimate" by limiting it to persons who have or have had a sexual relationship with each other. Rather, it includes all married and unmarried couples as well as all persons who are the parents of the same child. Disher's interpretation asks us to read language into the statute that is not there. We decline to do so. Such an interpretation would restrict the scope of the statute and expose victims to potentially embarrassing cross-examinations aimed at re-

vealing information about sexual conduct that the statute simply does not require.

There is no evidence in the statute that the General Assembly intended an intimate relationship to refer only to a sexual relationship, thereby limiting the types of couples who are covered by the domestic violence statute. However, given the statute's silence on this point, we look beyond its text to resolve the ambiguity.

### B.

Nothing in the legislative history indicates that the legislature intended intimate relationships to include only sexual relationships. The statute dates from 1989, when it replaced a statute enacted one year prior that had made domestic violence a misdemeanor crime. Ch. 166, sec. 1, § 18–6–800.3, 1989 Colo. Sess. Laws 909. Due to problems with the enforcement and application of the criminal domestic violence statute, the legislature replaced it with the current sentence enhancer statute. That version remains to this day, with only a few minor amendments since its enactment. Ch. 325, sec. 1, § 18–6–800.3, 1994 Colo. Sess. Laws 2020; Ch. 152, sec. 1, § 18–6–800.3, 1995 Colo. Sess. Laws 566; Ch. 197, sec. 7, § 18–6–800.3, 2007 Colo. Sess. Laws 726. The transformation of domestic violence from a crime to a sentence enhancer was intended to bring more crimes under the umbrella of domestic violence while avoiding concerns about the unconstitutionality of the criminal statute due to vagueness and overbreadth. *See generally Domestic Violence Sentence Enhancer Statute: Hearing on HB 1124 Before H. Comm. on the Judiciary,* January 26, 1989 (Statement of Representative Bill Irwin and Statement of Ray Slaughter, Executive Director of the Colorado District Attorneys' Council).

Colorado statutes defining an offense as sexual in nature do so explicitly; they do not require us to envision language that does not appear in the text. *See, e.g.,* § 18–6–403, C.R.S. (2009) (defining the sexual exploitation of a child by describing explicit sexual conduct in detail); § 18–6–301, C.R.S. (2009) ("incest" defined as "[a]ny person who knowingly marries, inflicts sexual penetration or sexual intrusion on, or subjects to sexual

contact"); § 18–3–405, C.R.S. (2009) (defining sexual assault on a child as "subject[ing a child] … to any sexual contact"); § 18–3–401, C.R.S. (2009) (defining "sexual contact," "sexual intrusion," and "sexual penetration" in explicit terms). These unambiguous definitions show that if the legislature intended domestic violence to be a crime related only to sexual activity, it would have said so.

### C.

Although this is a case of first impression in Colorado, the weight of authority nationally stands against requiring a sexual relationship before a court may find domestic violence. Other states' statutes are generally broader than ours and include people who share the same home in addition to family members and people linked romantically. *See, e.g.,* Ala.Code § 15–10–3 (2009) ("Family, household, or dating or engagement relationship members. Includes … a present or former household member, or a person who has or had a dating or engagement relationship."); 725 Ill. Comp. Stat. 5/112A–3(3) (2009) (" 'Family or household members' include … persons who share or formerly shared a common dwelling [and] … persons who have or have had a dating or engagement relationship…."); Mass. Gen. Laws ch. 209A § 1 (2009) (" 'Family or household members' [are] persons who: … are or were residing together in the same household…."); Wash. Rev.Code § 26.50.010(2) (2009) ("adult persons who are presently residing together or who have resided together in the past").

The State of Washington includes those engaged in a "dating relationship" within its list of potential domestic violence victims and defines a dating relationship as "a social relationship of a romantic nature. Factors that the court may consider in making this determination include: (a) the length of time the relationship has existed; (b) the nature of the relationship; and (c) the frequency of interaction between the parties." Wash. Rev.Code § 26.50.010(3) (2009). There is no mention in the statute that a dating relationship must be sexual. Similarly, the Massachusetts statute states that the factors for determining whether two individuals "are or

have been in a substantive dating or engagement relationship" are: "(1) the length of time of the relationship; (2) the type of relationship; (3) the frequency of interaction between the parties; and (4) if the relationship has been terminated by either person, the length of time elapsed since the termination of the relationship." Mass. Gen. Laws ch. 209A § 1 (2009).

Tennessee makes it explicitly clear that a dating relationship is not the same as a sexual one by including within the definition, "[a]dults or minors who are dating *or* who have dated or who have or had a sexual relationship ..." Tenn.Code Ann. § 36–3–601(5)(C) (2009) (emphasis added). The "or" conjunction demonstrates that those who have dated need not be the same as those who have had a sexual relationship. In New York, the factors considered when determining whether an "intimate relationship" exists include "the nature or type of relationship, regardless of whether the relationship is sexual in nature ..." N.Y. Family Court Law § 812 (McKinney 2009).

Although we are called upon to interpret the specific language of Colorado's statute, our review of other states shows that it is not common for legislatures around the country to make sexual relationships necessary precursors to domestic violence convictions. For us to hold that our legislature had intended such a result would be to assume that the legislature intended to place itself far outside the national mainstream of domestic violence statutes. Colorado's statute indicates no such intent.

### D.

The statute states that a crime constitutes domestic violence "when [it is] used as a method of coercion, control, punishment, intimidation, or revenge directed against a person with whom the actor is or has been involved in an intimate relationship." § 18–6–800.3(1). That is the hallmark of domestic violence: an action that is used to coerce, control, punish, intimidate, or exact revenge within the context of an intimate relationship. Whether that intimate relationship is also sexual is not determinative. A sexual relationship may be an indicator, but never a

necessary condition, of an intimate relationship for the purpose of the Colorado domestic violence statute.

Reading a requirement of sexual contact into the definition of intimate relationship would greatly reduce the scope of the statute. Couples that do not have sexual relations would not be covered. It could also leave out couples who are the adoptive parents of the same child.

When determining if a relationship falls within the category of intimate relationships a court may take into account the following three factors: (1) the length of time the relationship has existed, or did exist; (2) the nature or type of the relationship; (3) the frequency of interaction between the parties. These factors are not intended to be an exhaustive list of the characteristics a court may consider; they are a guide that may be used in whole or in part. However, an intimate relationship should not include mere social or business acquaintances and friends.

In summary, a sexual relationship may be an indicator of an intimate relationship, but a sexual relationship need not be present. The relationship must be more than that of a roommate, friend, or acquaintance; there must be a romantic attachment or shared parental status between the parties.

### V. Application

M.P.'s testimony that she and the defendant had "dated exclusively" was enough for the judge as fact finder to find an intimate relationship, assuming the judge believed the testimony to be credible. The record contains very little testimony about M.P.'s relationship with Disher. But the second factor of our test, which asks courts to consider the nature or type of relationship, encompasses M.P.'s situation. She describes her connection with Disher as an exclusive dating relationship and states that they had "broken up" around Christmas. This brings their relationship within the type of interpersonal connection that the statute contemplates as it tries to curb relationship violence. In other cases, a victim or defendant may not describe his or her relationship as clearly as M.P. did here. Looking to the other factors,

such as the length of time the relationship existed and the frequency of interaction between the parties, may prove useful in those instances.

The existence of a dating relationship indicates the kind of romantic attachment required by the statute. Whether that dating relationship was sexual in nature should not have been the determining factor.

## VI. Conclusion

An intimate relationship is not synonymous with a sexual relationship. Intimate relationships can be sexual, but they need not be. M.P.'s testimony that she had a dating relationship with Disher was sufficient to allow a judge to find that an intimate relationship existed for the purposes of the domestic violence statute. We reverse the judgment of the district court and remand the case for proceedings consistent with this opinion.