2013 COA 76

**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Joshua J. JENKINS, Defendant–Appellant.**

**Court of Appeals No. 11CA0624**

Colorado Court of Appeals, Div. VI.

Announced May 23, 2013

Mesa County District Court No. 08CR1556. Honorable Richard T. Gurley, Judge.

John W. Suthers, Attorney General, Carmen Moraleda, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Joshua J. Jenkins, Pro Se.

Opinion by Judge BERNARD

¶ 1 This appeal presents a question about the sentencing authority of a court in a criminal case. Can the court sentence a defendant who has been convicted of a felony to an indeterminate probationary term of ten years to life, even if the defendant is not a sex offender who has been convicted of a sex offense subject to sentencing under the Sex Offender Lifetime Supervision Act (SOLSA)? We conclude that, under the circumstances here, the answer to this question is "yes." Therefore, because this answer means that the trial court did not impose an illegal probationary term when it sentenced defendant, Joshua J. Jenkins, we affirm the trial court's order denying defendant's Crim. P. 35(a) motion.

## I. Background

¶ 2 Defendant was charged in three separate cases with having committed various felonies. In 2009, as part of a plea agreement, he pled guilty to charges in two of the cases. In the first one, he pled guilty to a drug-related felony, and the court sentenced him to prison for five years.

¶ 3 This appeal concerns the second case. Defendant pled guilty to one count of sexual exploitation of a child, which was a class four felony. The court sentenced him to an indeterminate term of ten years to life of sex offender specific probation. The court ordered that the probation sentence was to be served consecutively to the prison sentence in the drug case.

¶ 4 Defendant filed a notice of appeal in this case, but he later withdrew it so that he could file a Crim. P. 35(a) motion to "challeng[e] an illegal sentence."

¶ 5 In February 2010, defendant filed a pro se Crim. P. 35(a) motion alleging that the indeterminate probationary term in this case was illegal. The court denied the motion on its merits in March 2010. In doing so, the court adopted the reasoning in the prosecution's written response to defendant's motion. Apparently relying on section 18–1.3–1004(2)(a), C.R.S.2012 (subsection 1004(2)(a)), the prosecution argued that, because defendant was a sex offender, the court was authorized to sentence him to an indeterminate probation sentence from ten years to life.

¶ 6 Defendant filed an untimely notice of appeal, and a motions division of this court dismissed the appeal with prejudice.

¶ 7 Defendant filed a second pro se Crim. P. 35(a) motion in November 2010. In it, he conceded that many of the arguments in the second motion were "the same" as those raised in the first motion. The trial court denied the second motion on its merits in November 2011. However, the court relied on a different statute in its decision than the prosecution had cited as support for its opposition to defendant's first Crim. P. 35(a) motion. Referring to the statute that describes a court's probationary power, section 18–1.3–202(1), C.R.S.2012 (subsection 202(1)), the trial court stated that it was "authorized to impose an indeterminate sentence" because "[t]he statute places no limitations on the duration of probation in felony cases and expressly provides that the length of probation may exceed the maximum period of incarceration authorized for the offense classification."

¶ 8 Defendant then filed this appeal.

## II. Multiple Crim. P. 35(a) Motions

¶ 9 We recognize that this appeal is from the trial court's decision to deny defendant's *second* Crim. P. 35(a) motion, which raises the same issue as the first Crim. P. 35(a) motion. Although the state has an important interest in the finality of criminal convictions, *see People v. Wiedemer*, 852 P.2d 424, 434 (Colo.1993), we conclude that this appeal should not be barred, *see People v.*

*Tolbert,* 216 P.3d 1, 4–6 (Colo.App.2007). Crim. P. 35(a) does not contain language, similar to the language in Crim. P. 35(c)(3)(VI), that bars relief for certain claims that were "raised and resolved in a prior postconviction proceeding." *See People v. Roy,* 252 P.3d 24, 28 (Colo.App.2010); *Tolbert,* 216 P.3d at 4.

### III. Defendant's Probation Sentence Is Legal

#### A. General Principles and Standards of Review

■ ¶ 10 We note initially that the length of a sentence to probation is not ordinarily subject to appellate review "unless probation is granted contrary to the provisions of this title." § 18–1.3–104(1)(a), C.R.S.2012. However, as the quoted language indicates, where, as here, a defendant contends that "a court has exceeded its statutory authority" in imposing a probationary sentence, appellate review is warranted. *People v. Rossman,* 140 P.3d 172, 174 (Colo.App.2006).

■ ¶ 11 An illegal sentence is one that is not authorized by law, meaning that it is inconsistent with the sentencing scheme established by the legislature. *People v. Wenzinger,* 155 P.3d 415, 418 (Colo.App.2006). Claims that a sentence was not authorized by law may be raised at any time. *People v. Bowerman,* 258 P.3d 314, 316 (Colo.App. 2010). Whether the trial court correctly determined the statutorily authorized sentencing range is an issue of law that we review de novo. *People v. Everett,* 250 P.3d 649, 663 (Colo.App.2010).

¶ 12 Our inquiry here also requires us to interpret statutes, which is an issue that we also review de novo. *People v. Garcia,* 113 P.3d 775, 780 (Colo.2005). When interpreting statutes, our focus is to give effect to the legislature's intent. *Romero v. People,* 179 P.3d 984, 986 (Colo.2007). To determine this intent, we first look to the plain language of the statute, *see id.,* and we give that language its common meaning, *Hastie v. Huber,* 211 P.3d 739, 741 (Colo.App.2009). If the statute's language is clear and unambiguous, we do not need to engage in additional analysis. *Romero,* 179 P.3d at 986.

#### B. Analysis

¶ 13 The prosecution contends that the indeterminate probationary term is a legal sentence, and it bases this contention on two statutory pillars: subsection 1004(2)(a) and subsection 202(1). We conclude that, although the first pillar does not support the prosecution's contention, the second pillar does.

#### 1. Subsection 1004(2)(a)

■ ¶ 14 SOLSA establishes a lifetime supervision scheme for sex offenders who meet its definitions. § 18–1.3–1001, C.R.S.2012 ("The general assembly ... declares that a program under which sex offenders may receive treatment and supervision for the rest of their lives, if necessary, is necessary for the safety, health, and welfare of the state."). Part of this sentencing scheme includes indeterminate sentencing, which is different from the scheme governing sentencing in other types of cases. SOLSA

> creates specific sentencing provisions for a specific type of felony—sexual offenses— whereas the general sentencing provisions in § 18–1.3–401 create presumptive ranges that apply to general classes of felonies. The sentencing provisions of [SOLSA] therefore supplant the presumptive ranges in § 18–1.3–401, and the appropriate sentence for a sex offense is determined by [SOLSA] rather than by the general sentencing statute.

*People v. Larson,* 97 P.3d 246, 252 (Colo.App. 2004).

¶ 15 An example of SOLSA's indeterminate sentencing scheme appears in section 18–1.3–1004(1)(a), C.R.S.2012. This statute states that courts shall sentence sex offenders to prison "for an indeterminate term of at least the minimum of the presumptive range specified in section 18–1.3–401 for the level of offense committed and a maximum of the sex offender's natural life."

¶ 16 Subsection 1004(2)(a) addresses probationary sentences in SOLSA cases, stating that, as pertinent here, the trial court

> based on consideration of the evaluation conducted pursuant to section 16–11.7–104

... and the factors specified in section 18–1.3–203, may sentence a sex offender to probation for an indeterminate period of at least ten years for a class 4 felony ... and a maximum of the sex offender's natural life.

¶ 17 The question here is whether defendant is a "sex offender" who could be sentenced to probation under subsection 1004(a)(2). We conclude that he is not.

¶ 18 One way in which defendant could have been classified as a sex offender is found in section 18–1.3–1003(4), C.R.S.2012. That statute states that a "sex offender" is a person who "pleads guilty ... to a sex offense." The term "sex offense" is defined to be any offense that is listed in section 18–1.3–1003(5), C.R.S.2012. The crime to which defendant pled guilty—sexual exploitation of a child under section 18–6–403, C.R.S.2012—does not appear in this list.

¶ 19 At the time defendant was sentenced, there was another way in which he could have been classified as a sex offender. There was additional language, which stated that the term "[s]ex offender also means any person sentenced as a sex offender pursuant to section 18–1.3–1004(4)." Ch. 318, sec. 2, § 18–1.3–1003(4), 2002 Colo. Sess. Laws 1436–37. This additional language was deleted by legislative amendment in June 2012. Ch. 268, sec. 23, 2012 Colo. Sess. Laws 1402.

¶ 20 Section 18–1.3–1004(4) was also repealed in June 2012. Ch. 268, sec. 14, 2012 Colo. Sess. Laws 1397. However, when defendant was sentenced, it set out a two-part test to determine whether an offender fell within its coverage. Ch. 318, sec. 2, § 18–1.3–1004(4)(a), 2002 Colo. Sess. Laws 1436–37. First, the offender had to be convicted of one of several crimes, which included "[s]exual exploitation of children, as described in section 18–6–403." Ch. 318, sec. 2, § 18–1.3–1004(4)(b)(II), 2002 Colo. Sess. Laws 1437. Defendant obviously satisfied this criterion.

¶ 21 But defendant did not satisfy the second criterion. Former section 18–1.3–1004(4)(a) also required that (1) an offender undergo a sex offender evaluation under section 16–11.7–104, C.R.S.2012; *and* (2) the result of such an evaluation must be a determination that the offender would be "likely to commit one or more of the offenses" listed in the statute defining sexually violent predators, section 18–3–414.5(1)(a)(II), C.R.S.2012, wherein the offense involved a "victim [who] was a stranger to the offender or a [victim] with whom the offender established or promoted a relationship primarily for the purpose of sexual victimization," section 18–3–414.5(1)(a)(III), C.R.S.2012.

¶ 22 Here, although defendant was evaluated under section 16–11.7–104, the evaluator determined that defendant was neither a pedophile nor a predator. As a result, the trial court found that defendant was not "likely to commit one of [the offenses described in section 18–3–414.5(1)(a)(II) ] as a sexually violent predator." Therefore, defendant could not have been sentenced as a sex offender under former section 18–1.3–1004(4)(a).

¶ 23 We conclude that, because defendant did not meet either of the relevant definitions of a sex offender in SOLSA, he could not be sentenced to probation "for an indeterminate period of at least ten years ... and a maximum of [his] natural life" under subsection 1004(2)(a).

¶ 24 Our conclusion is buttressed by language found in section 18–1.3–1007(1)(a), C.R.S.2012:

> The judicial department shall establish an intensive supervision probation program for sex offenders sentenced to probation pursuant to this part 10. *In addition,* the court shall require a person, as a condition of probation, to participate in the intensive supervision probation program established pursuant to this section if the person is convicted of one of the *following offenses* and sentenced to probation.

(Emphasis supplied.) The offense defendant committed here—sexual exploitation of a child—is one of the "following offenses" "[i]n addition" to offenses committed by sex offenders "sentenced to probation pursuant to this part 10."

¶ 25 As a result, section 18–1.3–1007(1)(a) creates an intensive supervision probation program for two classes of persons who have been sentenced to probation, and it recog-

nizes a distinction between them that is pertinent here. One class includes sex offenders who are sentenced to probation under SOL-SA. *In addition,* the second class includes persons who are *not* sex offenders under SOLSA, such as defendant, who have committed a sex-related offense, but who are not sentenced to probation under SOLSA.

### 2. Subsection 202(1)

¶ 26 Subsection 202(1) defines the probationary power that courts have. It states, as pertinent here:

> When it appears to the satisfaction of the court that the ends of justice and the best interest of the public, as well as the defendant, will be served thereby, *the court may grant the defendant probation for such period* and upon such terms and conditions *as it deems best.* The length of probation shall be *subject to the discretion of the court* and *may exceed the maximum period of incarceration* authorized for the classification of the offense of which the defendant is convicted but shall not exceed five years for any misdemeanor or petty offense.

§ 18–1.3–202(1) (emphasis supplied).

¶ 27 Relying on the second sentence of subsection 202(1), the prosecution submits that, because the trial court had the authority to sentence defendant to a probationary term that exceeded the "maximum period of incarceration authorized" for a class four felony, an indeterminate probationary term of ten years to life was not an illegal sentence. We agree.

### a. Statutory Background

¶ 28 We begin with a short history of the statutes governing probation in Colorado that led up to present-day subsection 202(1). As pertinent here, as of 1921, probation was only available (1) for misdemeanors; and (2) for a period of two years. C.L. 1921, ch. 147, §§ 6508, 6509, 6513. By 1935, the legislature had empowered courts to suspend the imposition or execution of a sentence in felony cases, and increased the probationary period in such cases, along with any extensions of probation, to five years. C.S.A. 1935, ch. 140, § 1. This five-year upper limit on proba-

tionary terms for felonies stayed in place for about the next thirty-seven years. § 39–16–6, C.R.S.1953; § 39–16–6(1), C.R.S.1963.

¶ 29 The status quo changed in 1972. The legislature removed the five-year limit. Ch. 44, § 39–11–202, 1972 Colo. Sess. Laws 242.

¶ 30 Then, in 2003, the General Assembly added what is now the second sentence of subsection 202(1):

> The length of probation shall be subject to the discretion of the court and may exceed the maximum period of incarceration authorized for the classification of the offense of which the defendant is convicted but shall not exceed five years for any misdemeanor or petty offense.

Ch. 134, sec. 13, § 18–1.3–202(1), 2003 Colo. Sess. Laws 976; *see People v. Kennaugh,* 80 P.3d 315, 316 n. 1 (Colo.2003) (describing 2003 amendment to subsection 202(1)).

### b. Case Law Background

¶ 31 *People v. Flenniken,* 749 P.2d 395, 399–400 (Colo.1988), was decided before the 2003 amendment, but, as we describe below, the 2003 amendment reinforces *Flenniken*'s holding. In *Flenniken,* our supreme court made three observations that are pertinent to our analysis.

¶ 32 First, a sentence to probation is governed only by what is now part 2 of article 1.3 of title 18, and the statutes governing sentences to imprisonment, which are found in what is now part 4 of article 1.3 of title 18, do not apply. *Flenniken,* 749 P.2d at 399.

¶ 33 Second,

> there are sound policy reasons for not limiting a term of probation to the maximum presumptive term of incarceration authorized by statute. Although incarceration is primarily punitive, probation is primarily rehabilitative. There is no reason to believe that the legislature's judgment concerning an appropriate term of punishment by imprisonment was intended to fix, or is even related to, the term of probation that may be required to rehabilitate the offender. There may be many cases in which the goals of probation simply cannot

be achieved within the time constraints the legislature has placed on imprisonment. *Id.*

¶ 34 Third, because the probationary terms analyzed in *Flenniken,* were "within the maximum term of imprisonment in the aggravated range" for the offenses in question, the supreme court made clear that it was "not faced with," and therefore would not address, "the question of whether a term of probation may exceed the maximum sentence in the aggravated range for the offense for which a defendant is sentenced." *Id.* at 400 n. 4; *see also Kennaugh,* 80 P.3d at 318 (*Flenniken* held that "the term of probation for a felony conviction was not absolutely limited to the maximum *presumptive range* of imprisonment for the underlying class of felony," but "expressly declined to consider" whether a probationary sentence could exceed the maximum sentence in the aggravated range (emphasis in original)); *Hunter v. People,* 757 P.2d 631, 632 (Colo.1988) ("We did not determine the outer limit of a sentencing court's authority to impose probation in *Flenniken* ....").

¶ 35 A division of this court addressed the issue that was reserved in *Flenniken,* holding that "the maximum sentence [to imprisonment] in the aggravated range ... does not establish the maximum period of probation to which a defendant may be sentenced." *People v. Martinez,* 844 P.2d 1203, 1206 (Colo.App.1992). The division based this holding, in part, on its conclusion that "[n]o ceiling has ... been added to the probation statute [since 1972]. We must, therefore, conclude that the General Assembly chose not to impose an express limitation on the duration of a term of probation." *Id.*

¶ 36 Another division of this court applied the reasoning of *Flenniken* and *Martinez* to conclude that there are no statutory limits on the *minimum* probationary sentence that a court may impose. *People v. Herr,* 868 P.2d 1121, 1126 (Colo.App.1993).

### c. Discussion

¶ 37 We conclude that the 2003 amendment that added the second sentence to subsection 202(1) buttressed the division's conclusion in *Martinez* that the maximum sentence in the presumptive range does not establish the maximum period of probation. In our view, the amendment makes it abundantly clear that a court may sentence a defendant to a term of probation that exceeds the top of the aggravated range that would be available for a sentence to imprisonment.

¶ 38 The history of subsection 202(1), *Flenniken,* and *Flenniken's* progeny lead us to conclude that subsection 202(1) authorizes a trial court to impose an indeterminate term of probation. Our conclusion is supported by the following eight reasons.

¶ 39 First, "probation is a statutory creation and the terms of probation must be derived from the applicable statute." *People v. Brockelman,* 933 P.2d 1315, 1318 (Colo.1997). Therefore, our focus here is only on the statutes concerning probation. And these statutes give trial courts "broad powers to craft appropriate conditions of probation." *Id.*

¶ 40 Second, the plain language of subsection 202(1) contemplates the possibility of an indeterminate term of probation. It authorizes the court to grant probation for "such period ... as it deems best." As pertinent here, the word "period" is defined to mean "a customary or ordained length of existence," or "a time often of indefinite length but of distinctive or specified character." *Webster's Third New International Dictionary* 1680 (2002). These definitions contemplate both determinate and indeterminate terms of probation. This conclusion is amplified by the second sentence of subsection 202(1), which states that the "length of probation" is subject to the court's discretion, indicating that the court is authorized to craft a probationary period that is determinate or indeterminate.

¶ 41 Further, subsection 202(1) does not expressly refer to determinate or indeterminate terms of probation. The absence of such a distinction indicates that the legislature has not eliminated either option from the trial court's consideration.

¶ 42 Third, the General Assembly has, over time, expanded the potential length of the

probationary period. In 1921, a court could place a defendant on probation for two years for a misdemeanor. Between approximately 1935 and 1971, courts had the authority to sentence defendants convicted of felonies to probationary terms of up to five years. The five-year limit was removed in 1972, and, in 2003, the legislature made clear that a court had discretion to place a defendant convicted of a felony on probation for a term that exceeded the maximum period of time authorized for the particular offense. *See Flenniken,* 749 P.2d at 399 n. 2 ("[I]t is apparent from the history of [subsection 202(1)] that the legislature deliberately chose not to impose an express limitation on the permissible length of probation."); *Martinez,* 844 P.2d at 1206 (legislature did not place express limits on lengths of probationary terms).

¶ 43 Here, defendant was convicted of a class four felony, and so the maximum period of incarceration authorized by law was twelve years. *See* § 18–1.3–401(1)(a)(V)(A), (6), C.R.S.2012. Although an indeterminate probationary term of ten years to life *could* exceed the twelve-year maximum prison sentence if defendant is not discharged from probation before twelve years, such a result is authorized by the plain language of section 202(1).

¶ 44 Fourth, the legislature clearly understands the difference between determinate and indeterminate sentencing. In the late 1970s, the legislature changed the statutes governing sentencing and parole from an indeterminate system to a determinate system. Ch. 157, secs. 1–26, 1979 Colo. Sess. Laws 664–72; *see also Thiret v. Kautzky,* 792 P.2d 801, 803–04 (Colo.1990). This modification did not include any concomitant amendment of subsection 202(1), nor did it make any reference to a court's authority to sentence offenders to probation.

■ ¶ 45 Further, our supreme court held in *Flenniken* that a determination of the length of probation is only governed by the statutes concerning probation, and not by the statutes concerning sentences to imprisonment. *Flenniken,* 749 P.2d at 399. Therefore, the determinate sentencing structure found in sections 18–1.3–401 to –408, C.R.S. 2012, does not apply. As proof of this point,

section 18–1.3–408 states, as pertinent here: "When a person has been a convicted of a felony and a *sentence of imprisonment imposed,* the court imposing the sentence shall fix a definite term of imprisonment...." (Emphasis supplied.) Thus, the determinate sentencing scheme found in part 4 of article 1.3 of title 18 only requires determinate *prison* sentences.

¶ 46 Fifth, even if we assume, for purposes of discussion, that (1) subsection 202(1) is ambiguous, and (2) we must resort to tools of statutory interpretation, such as legislative history, *see People v. Disher,* 224 P.3d 254, 256 (Colo.2010)("[i]f the language is ambiguous, we rely on other factors, including[ ] legislative history"), in any event our review of subsection 202(1)'s legislative history supports our conclusion here. For example:

- We found no legislative history, other than what is discussed in case law, concerning the legislature's decision in 1972 to remove the five-year limit on the period of probation.

- We found no discussion of probation in the hearings concerning the legislature's decision in 1979 to adopt a determinate sentencing scheme. *See, e.g.,* Hearings on H.B. 1589 before the H. Judiciary Comm., 52d Gen. Assemb., 1st Sess. (Mar. 13, 1979); Hearings on H.B. 1589 before the S. Judiciary Comm., 52d Gen. Assemb., 1st Sess. (Mar. 23, 1979).

- In 2003, when the legislature made clear that courts have discretion to sentence defendants to probation for terms that exceed the maximum determinate sentences, witnesses testified that (a) judges historically had broad discretion to choose the length of probationary terms in felony cases; and (b) judges needed similar flexibility in choosing the length of such terms in misdemeanor cases, notwithstanding a then-recent court of appeals opinion that limited such authority. *See, e.g.,* Hearings on S.B. 147 before the S. Judiciary Comm., 64th Gen. Assemb., 1st Sess. (Feb. 4, 2003) (testimony of Peter Weir, Colorado District Attorneys Council). In addition, two witnesses opposed the statutory change because they feared that the language as originally proposed would have authorized lifetime probationary sentences not only in felony cases but also in *misdemeanor* cases. *See id.* (testimony of Guss Guarino, Colo-

rado Criminal Defense Bar); Hearings on S.B. 147 before the H. Judiciary Comm., 64th Gen. Assemb., 1st Sess. (Feb. 27, 2003)(testimony of Maureen Cain, Colorado Criminal Defense Bar). This concern ultimately led the legislators to amend the bill to add the language in the current statute placing a five-year limit on probationary terms for misdemeanors and petty offenses. *See* Hearings on S.B. 147 before the H. Judiciary Comm., 64th Gen. Assemb., 1st Sess. (Feb. 27, 2003). No such limit, however, was placed on felony cases. Thus, it is clear to us that, in 2003, the legislature understood that existing law authorized indeterminate probationary periods in felony cases, including, as here, an indeterminate probationary period of ten years to life.

 ¶ 47 Sixth, the policy considerations underpinning probation support a court's authority to impose an indeterminate sentence. Probation focuses on rehabilitation, *see Flenniken*, 749 P.2d at 399, and an indeterminate probationary term may be necessary in certain instances to achieve rehabilitative goals for certain offenders.

 ¶ 48 Seventh, a court retains discretion to determine when an offender who has been sentenced to an indeterminate term can be terminated from probation. Although "[t]he probation statute does not specify when a trial court's authority over a probationer terminates," *People v. Gore*, 774 P.2d 877, 884 (Colo.1989), subject to enumerated procedural steps, a court may

> [f]or good cause shown and after notice to the defendant, the district attorney, and the probation officer, and after a hearing if the defendant or the district attorney requests it, ... *reduce* or increase the term of probation.

§ 18–1.3–204(4)(a), C.R.S.2012 (emphasis supplied). Thus, the court makes the decision when to terminate an offender's probation, and does so by issuing an order to that effect. *See Gore*, 774 P.2d at 884.

¶ 49 Eighth, we do not create a conflict between subsections 202(1) and 1004(2)(a) by interpreting subsection 202(1) to allow a court to impose an indeterminate term of probation, nor do we render subsection 1004(2)(a) superfluous. Rather, we interpret the statutes to give each effect and avoid conflict between them. *See People v. Mojica–Simental*, 73 P.3d 15, 17–18 (Colo.2003) (appellate courts favor statutory interpretation that harmonizes statutes and avoids conflicts); *State v. Borquez*, 751 P.2d 639, 643 (Colo.1988)("[s]tatutes upon the same subject are to be construed together and reconciled if possible").

¶ 50 Subsection 1004(2)(a) specifically pertains to a narrow class of cases, and it states that, if a court sentences a *sex offender* who has been convicted of a class two, three, or four felony to probation, then it *must* impose an indeterminate probationary sentence of twenty years to life for the class two or class three felony, or of ten years to life for the class four felony. Subsection 202(1) generally pertains to a broad class of cases, and it simply *allows* a trial court to elect an indeterminate term if it sentences *an offender who has been convicted of a felony* to probation. *See People v. Carrillo*, 2013 COA 3, ¶ 35, 297 P.3d 1028 (reconciling two statutes concerning presentence confinement credit for misdemeanors). Thus, subsection 202(1) establishes a general rule as far as the possibility of an indeterminate probationary term for felonies, and subsection 1004(2)(a) sets out an exception to that rule that requires an indeterminate probationary term, and specifies its length, for a small subclass of felonies. *See People v. Owens*, 219 P.3d 379, 383 (Colo.App.2009) (concluding that general grant of jurisdiction to the court of appeals was modified by specific limitations set by the legislature).

¶ 51 Therefore, after conducting our de novo review, *see Everett*, 250 P.3d at 663, we conclude that the probationary sentence of ten years to life that the trial court entered in this case was authorized by law because it was not inconsistent with the legislative scheme concerning probation. Therefore, it was not an illegal sentence. *See Wenzinger*, 155 P.3d at 418.

¶ 52 The trial court's order denying defendant's Crim. P. 35(a) motion is affirmed.

GABRIEL and PLANK *, JJ., concur