24CA0310 Peo v Owings 08-14-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0310
Arapahoe County District Court No. 03CR818
Honorable Jacob A. Edson, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Jefferson Wade Owings,

Defendant-Appellant.

---

ORDER AFFIRMED

Division II
Opinion by JUDGE HARRIS
Fox and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced August 14, 2025

---

Philip J. Weiser, Attorney General, Melissa D. Allen, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Jefferson Wade Owings, Pro Se

¶ 1     Defendant, Jefferson Wade Owings, appeals the denial of his Crim. P. 35(a) motion.  We affirm.

## I.     Background

¶ 2     A jury found Owings guilty of sexually assaulting his daughter on multiple occasions between April 2001 and January 2002.[1]  The court sentenced Owings under the Colorado Sex Offender Lifetime Supervision Act of 1998 (SOLSA) to prison terms as follows:

- sixteen years to life on counts 1-4: sexual assault on an at-risk juvenile by one in a position of trust, class 2 felonies;

- ten years to life on counts 5-8: aggravated incest, class 3 felonies;

- six years to life on count 9: attempted sexual assault on an at-risk juvenile by one in a position of trust, a class 3 felony; and

- six years to life on count 10: attempted aggravated incest, a class 4 felony.

---

[1] Owings was also convicted of contributing to the delinquency of a minor and misdemeanor child abuse, but those convictions are not at issue in this appeal.

¶ 3     The court also imposed parole terms of twenty years to life on counts 1-9 (the sexual assault, incest, and attempted sexual assault counts) and ten years to life on count 10 (the attempted incest count).  During the sentencing hearing, the court referred to "mandatory parole," but the mittimus indicates only that for "COUNTS 1-9 PAROLE IS 20 YEARS TO LIFE" and for "COUNT 10 [PAROLE] IS 10 YEARS TO LIFE."

¶ 4     Owings' convictions and sentences were affirmed on direct appeal.  *People v. Owings*, (Colo. App. No. 06CA1179, Dec. 16, 2010) (not published pursuant to C.A.R. 35(f)).

¶ 5     He later filed two postconviction motions — a Crim. P. 35(c) motion challenging the constitutionality of his convictions and a Crim. P. 35(a) motion challenging the lawfulness of his consecutive sentences.  The district court summarily denied the motions, and the orders were affirmed on appeal.  *People v. Owings*, (Colo. App. No. 11CA0976, Mar. 15, 2012) (not published pursuant to C.A.R. 35(f)); *People v. Owings*, (Colo. App. No. 14CA2156, Sept. 15, 2016) (not published pursuant to C.A.R. 35(e)).

¶ 6     In 2023, Owings filed the pro se Crim. P. 35(a) motion at issue here.  He argued that his sentences are illegal because (1) they

include, as a component, mandatory rather than discretionary parole; and (2) they were improperly enhanced under the crime of violence and/or the extraordinary risk crime statutes.

¶ 7     The district court denied the motion in a brief written order without a hearing.[2]

## II.     Analysis

¶ 8     In his pro se appeal, Owings reasserts the same arguments raised in his Crim. P. 35(a) motion.[3]

### A.     Standard of Review

¶ 9     Crim. P. 35(a) allows a defendant in a criminal case to file a postconviction motion to correct an illegal sentence — that is, a sentence that fails to comply with statutory requirements.

---

[2] On appeal, Owings says that the district court failed to enter sufficient written findings of fact and conclusions of law as required by Crim. P. 35(c)(3)(IV).  But Owings' motion was filed pursuant to Crim. P. 35(a), which does not include a similar provision.  And because Owings' motion raised only issues of law, a hearing was not required.  *See People v. Lepine*, 744 P.2d 81, 83 (Colo. App. 1987).

[3] In his brief on appeal, Owings provided a short statement asserting that the court erred in denying his motion and then attached the motion to his opening brief.  True, as the People point out, the brief does not comply with our appellate rules, but because we review the denial of a Crim. P. 35(a) motion by examining the allegations and the court's order de novo, we can effectively and efficiently resolve this appeal on the merits and elect to do so.

*Tennyson v. People*, 2025 CO 31, ¶¶ 24, 25. A claim that parole was imposed in violation of the statutory scheme outlined by the legislature is an illegal sentence claim properly brought under Crim. P. 35(a). *People v. Rockwell*, 125 P.3d 410, 416 (Colo. 2005).

¶ 10     An illegal sentence claim can be raised at any time. *People v. Jenkins*, 2013 COA 76, ¶ 11. We review de novo the legality of a sentence and the summary denial of a Crim. P. 35(a) motion. *People v. Tennyson*, 2023 COA 2, ¶ 9, *aff'd*, 2025 CO 31.

### B.     Owings' Parole Terms

¶ 11     Owings contends that, for each of his sentences, the court should have imposed discretionary rather than mandatory parole. To provide context for our disposition, we briefly explain the evolution of the parole scheme in Colorado.

¶ 12     Generally speaking, before 1993, parole was granted at the discretion of the parole board: After an offender became eligible for parole, it was within the board's discretion to decide whether, when, and for how much of the remainder of his prison sentence to release him to parole supervision. *See Martin v. People*, 27 P.3d 846, 849-50 (Colo. 2001). In 1993, the legislature adopted a scheme of mandatory parole for convicted felons. *Id.* at 850; Ch. 322, sec. 7,

§ 18-1-105(1)(a)(V), 1993 Colo. Sess. Laws 1981-82.  Under this scheme, the length of a prison term and the predetermined parole term became separate components of the penalty imposed by the court.  *Martin*, 27 P.3d at 849-50.

¶ 13    But while the new mandatory parole scheme applied to most felons, the legislature maintained discretionary parole for sex offenders.  *Id.* at 850; *see* § 17-2-201(5)(a), C.R.S. 2024.

¶ 14    Under a discretionary parole system, an offender is released from prison to parole for the remainder of the unserved portion of his prison sentence.  *Martin*, 27 P.3d at 855, 858 ("[T]he period of parole granted by the parole board cannot be longer than the unserved portion of the sentence of incarceration.").  If the offender violates his parole conditions, he may be returned to custody and forced to serve up to the remaining term of his sentence.  *Id.* at 858.

¶ 15    Under a mandatory parole scheme, on the other hand, an offender does not begin serving a period of parole until his prison sentence has been fully served, or the parole board determines that he is ready for parole.  *Id.*  But once released on parole, he is deemed to have discharged his sentence to imprisonment and is then serving only his predetermined parole term.  *Id.*  Thus, if the

offender violates his parole conditions, he can be returned to prison for a period of confinement unrelated to the original sentence.  *Id.*

¶ 16   In 1998, the legislature enacted SOLSA, which created a new indeterminate sentencing scheme for sex offenders and eliminated the designation of sex offender parole as discretionary or mandatory.  *See* Ch. 303, sec. 1, §§ 16-13-801 to -812, 1998 Colo. Sess. Laws 1278-88 (codified as amended at §§ 18-1.3-1001 to -1012, C.R.S. 2024).  Under SOLSA, a sex offender is eligible for parole after serving the minimum period of incarceration for his indeterminate sentence.  § 18-1.3-1006(1)(a), C.R.S. 2024.  If he is granted parole at the discretion of the parole board, his sentence of incarceration continues and is not deemed discharged until the board releases him from parole.  § 18-1.3-1006(1)(b).  Before an offender can be released from parole, he must serve the mandatory minimum parole period prescribed by SOLSA.  *People v. Tucker*, 194 P.3d 503, 504 (Colo. App. 2008).  In this way, the SOLSA parole system combines elements of both discretionary and mandatory parole schemes, but neither term accurately describes the statutory requirements.  *Id.*

¶ 17    Because Owings committed sex offenses after November 1, 1998, he was sentenced under SOLSA. *See* § 18-1.3-1012; *People v. Manaois*, 2021 CO 49, ¶ 36 (SOLSA applies "to any 'sex offense' . . . committed on or after November 1, 1998.").

¶ 18    An offender sentenced under SOLSA is subject to SOLSA's parole scheme: "As to any person sentenced for conviction of a sex offense pursuant to [SOLSA], committed on or after November 1, 1998, the board shall grant parole or refuse to grant parole, fix the conditions thereof, and set the duration of the term of parole granted pursuant to [SOLSA]." § 17-2-201(5)(a.7).[4]  Subsection 1006(b) of SOLSA, in turn, sets the mandatory periods of parole according to the class of felony of which the offender was convicted.

---

[4] Owings argues that because he committed the sexual offenses between April 2001 and January 2002, subsection (5)(a.5), not subsection (5)(a.7), of section 17-2-201, C.R.S. 2024, applies.  But subsection (5)(a.5) applies to sex offenders who committed sex offenses between July 1996 and July 2002 *who were not sentenced under SOLSA.  See, e.g., People v. Tolbert,* 216 P.3d 1, 3 (Colo. App. 2007) (defendant convicted of a class 5 felony sexual offense committed in June 2002, a crime not subject to SOLSA sentencing, should have been sentenced to discretionary parole pursuant to section 17-2-201(5)(a.5)).  Subsection (5)(a.5) exempts offenders who are covered by subsection (5)(a.7) — that is, offenders who are sentenced under SOLSA.  *See* § 17-2-201(5)(a.5) (applying to offenders "[e]*xcept as otherwise provided in paragraph (a.7) of this subsection (5)*") (emphasis added).

¶ 19    "The period of parole for any sex offender convicted of a class 2 or 3 felony shall be an indeterminate term of at least twenty years and a maximum of the remainder of the sex offender's natural life." § 18-1.3-1006(1)(b).  Owings was convicted of nine class 2 or class 3 felonies (the sexual assault, attempted sexual assault, and aggravated incest counts, counts 1-9).

¶ 20    "The period of parole for any sex offender convicted of a class 4 felony shall be an indeterminate term of at least ten years and a maximum of the remainder of the sex offender's natural life." *Id.* Owings was convicted of one class 4 felony sex offense (the attempted incest count, count 10).

¶ 21    Accordingly, the court properly noted on the mittimus that Owings was subject to parole for a term of "20 years to life" on counts 1-9 and for a term of "10 years to life" on count 10.  Because "discretionary" parole does not accurately describe SOLSA's parole scheme, we reject Owings' argument that the mittimus should reflect a sentence that includes "discretionary" parole.  *See Tucker*, 194 P.3d at 504 (explaining that because SOLSA parole is neither "discretionary" nor "mandatory," the mittimus should not include either word).

¶ 22    Still, as Owings points out, the court used the term "mandatory parole" when imposing the sentence.  And as a general matter, when the court's oral ruling conflicts with the mittimus, the oral ruling controls.  *See People v. Mendenhall*, 2015 COA 107M, ¶ 84.  But we discern no inconsistency between the mittimus and the court's oral ruling.  *See id.* ("We review de novo whether the mittimus accurately reflects the sentence imposed at the sentencing hearing.").  In our view, by referring to the term of parole as "mandatory," the court was merely acknowledging a mandatory aspect of SOLSA parole.  *See Tucker*, 194 P.3d at 504 ("[S]ection 18-1.3-1006(1)(b) contains language mandating a particular minimum indeterminate term of parole for certain levels of offenses falling under [SOLSA].");  *Martin*, 27 P.3d at 851 (SOLSA "mandates minimum periods that [SOLSA] sex offenders must serve on parole.").  The court was not imposing "mandatory" parole under section 18-1.3-401(1)(a)(V)(A), C.R.S. 2024, a penalty that does not exist under SOLSA.

¶ 23    In sum, we conclude that the parole component of Owings' sentence is consistent with sections 17-2-201(5)(a.7) and

9

18-1.3-1006(1)(b) and is therefore not illegal.[5] No remand for correction of the mittimus is required.

## C.   Proper Sentencing Ranges

¶ 24    In his Crim. P. 35(a) motion, Owings asserted that "crime of violence enhancers . . . are attached to this Defendant's sentence," and he requested "resentencing of the Defendant with no crime of violence enhancers attached to [his] sentence."

¶ 25    Owings' convictions for sexual assault on an at-risk juvenile, aggravated incest, and attempted aggravated incest are all crimes of violence because the jury found beyond a reasonable doubt that Owings used "threats, intimidation, and force" or caused bodily injury to the victim during the commission of those offenses. *See* § 18-1.3-406(2)(b)(I), C.R.S. 2024 ("'Crime of violence' also means any unlawful sexual offense in which the defendant caused bodily injury to the victim or in which the defendant used threat, intimidation, or force against the victim."); *see also* § 18-3-411(1), C.R.S. 2024 (defining "unlawful sexual offense" to include sexual

---

[5] To the extent Owings argues that the court ordered his parole terms to run consecutively, we disagree that the mittimus reflects such an order.

assault on a child by one in a position of trust, aggravated incest, and criminal attempt to commit those crimes).

¶ 26    Thus, the trial court was required to sentence Owings to an indeterminate term of at least the midpoint of the presumptive sentencing range and up to the maximum of his natural life for each of those convictions. *See* § 18-1.3-1004(1)(b), C.R.S. 2024.

¶ 27    By way of example, Owings was convicted of four counts of sexual assault on a child by one in a position of trust in violation of section 18-3-405.3, C.R.S. 2024. Because the victim was "less than fifteen years of age," and an "at-risk juvenile," that offense is a class 2 felony. § 18-6.5-103(7)(e), C.R.S. 2024.

¶ 28    The presumptive sentencing range for class 2 felonies is eight to twenty-four years. § 18-1.3-401(1)(a)(V)(A). Because that offense was subject to enhanced crime of violence sentencing, the trial court was required to sentence Owings to an indeterminate term of imprisonment, with a minimum sentence of at least the midpoint between eight and twenty-four years and a maximum sentence of life. *See Hunsaker v. People*, 2015 CO 46, ¶ 27 (sentencing for violent sex offenses requires an indeterminate term of imprisonment consisting of a "bottom-end" sentence between the midpoint in, but

not more than twice the maximum of, the presumptive range and a maximum sentence of life). The court sentenced Owings to sixteen years (the midpoint between eight and twenty-four) to life — the statutory minimum period of incarceration.

¶ 29 Owings' reliance on *People v. Tillery*, 231 P.3d 36 (Colo. App. 2009), *aff'd sub nom. People v. Simon*, 266 P.3d 1099 (Colo. 2011), is misplaced. *Tillery* concerned sentencing enhancement for "extraordinary risk" crimes, as designated under section 18-1.3-401(10). For those crimes, the upper end of the presumptive sentencing range is increased by anywhere from six months to four years, depending on the class of felony for which the defendant was convicted. § 18-1.3-401(10)(a). Most crimes of violence qualify as extraordinary risk crimes, but the *Tillery* division concluded that crimes of violence that are sexual offenses do not. *Tillery*, 231 P.2d at 52. Therefore, sexual offenses that are subject to crime of violence sentencing are not also subject to an extraordinary risk enhancement. *Id.*

¶ 30 To the extent Owings argues that his sentence is illegal because the court applied *both* crime of violence *and* extraordinary risk enhancements, we reject that argument. Owings does not

point to anything in the record suggesting that the court applied an extraordinary risk enhancement, and our review does not reveal any evidence that the court did so.

¶ 31    For one thing, neither defense counsel nor the prosecutor ever mentioned the extraordinary risk enhancement. The prosecution submitted a sentencing memorandum in which it set forth the minimum sentences applicable to each of Owings' convictions. The memorandum indicated that crime of violence sentencing applied, but it did not reference the extraordinary risk crime statute or assert that the upper end of the presumptive range should be increased. Moreover, the court did not say that it was applying an extraordinary risk crime enhancement and nothing about the sentences imposed suggests that it did. *Cf. People v. Banks*, 983 P.2d 102, 106 (Colo. App. 1999) (determining that the court erroneously applied the extraordinary risk crime enhancer because "[t]he only way for the trial court to have arrived at the five-year minimum sentence was by applying" the enhancer), *aff'd*, 9 P.3d 1125 (Colo. 2000).

¶ 32    We conclude that the court properly applied the crime of violence sentencing statute to counts 1-8 and 10 and that it did not

13

apply an additional enhancement under the extraordinary risk crime statute. Thus, Owings' sentences are not illegal on this basis either.

## III. Disposition

¶ 33 The order is affirmed.

JUDGE FOX and JUDGE SCHUTZ concur.